STATE OF CONNECTICUT *v.* MANUEL E. JURADO
(AC 28552)

DiPentima, McLachlan and Peters, Js.

Argued May 23—officially released August 5, 2008

*Daniel J. Foster*, special public defender, with whom was *Michael P. Shea*, special public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Brian F. Kennedy*, senior assistant state's attorney, for the appellee (state).

PETERS, J. The constitutional right to trial by jury guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. *State* v. *Cubano*, 203 Conn. 81, 88, 523 A.2d 495 (1987). The determination of a potential juror's impartiality ordinarily is a decision particularly within the province of the trial judge and therefore, on appeal, is reviewable only for an abuse of discretion. *State* v. *Esposito*, 223 Conn. 299, 310–11, 613 A.2d 242 (1992). In this case, the defendant claims that the trial court deprived him of his right to trial by an impartial jury by denying his request to remove a juror who, after hearing the testimony of a police officer who was the principal complainant, testified to knowing the complainant very well and expressed doubts about his ability to adjudge the case fairly. We conclude that, under these particularly telling circumstances, the court's refusal to remove the juror was an abuse of its discretion. Furthermore, because the juror's belated disclosure of the relevant facts deprived the defendant of an opportunity to exercise a peremptory challenge at voir dire, we conclude that the court's decision was prejudicial. The judgment is reversed and the case is remanded for a new trial.

The defendant, Manuel E. Jurado, was charged, tried and convicted of assault in the third degree in violation of General Statutes § 53a-61 (a) (1), assault of a peace officer in violation of General Statutes § 53a-167c (a) (1), interfering with an officer in violation of General Statutes § 53a-167a and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1). These charges were based on allegations that, on May 29, 2005, the defendant had assaulted Officer Ronald Mercado of the Bridgeport police department and another Bridgeport police officer. Mercado was the final witness in the state's presentation of its case. The jury found the defendant guilty only of the charges

relating to Mercado. The trial court sentenced the defendant to a total effective term of seven years imprisonment, execution suspended after three years, followed by five years probation.

The defendant has appealed. Although he does not challenge the sufficiency of the evidence against him or the validity of the trial court's evidentiary rulings, he argues that he is entitled to a new trial because the court improperly declined to excuse a juror who expressed doubts about his ability to adjudicate the defendant's case fairly. Those doubts arose out of the juror's ongoing acquaintanceship with Mercado, a relationship that the juror failed to disclose until after he had observed Mercado on the witness stand. We agree with the defendant that the juror should have been excused and an alternate juror should have taken his place.

The record discloses the following facts relating to the juror whose impartiality is at issue. At the beginning of general voir dire, the state informed the panel of venirepersons that Mercado was one of the witnesses it intended to call to testify. The court then asked the members of the venire to indicate whether they knew any of the witnesses. Venireperson C[1] did not so indicate.

During individual voir dire[2] of C, the following colloquy occurred:

[1] We decline to identify the juror by name to protect the juror's right to privacy. See *State* v. *Dorans*, 261 Conn. 730, 749 n.23, 806 A.2d 1033 (2002).

[2] Practice Book § 42-12 provides in relevant part: "Each party shall have the right to examine, personally or by counsel, each juror outside the presence of other prospective jurors as to qualifications to sit as a juror in the action, or as to interest, if any, in the subject matter of the action, or as to relations with the parties thereto. If the judicial authority before whom such examination is held is of the opinion from such examination that any juror would be unable to render a fair and impartial verdict, such juror shall be excused by the judicial authority from any further service upon the panel, or in such action, as the judicial authority determines. . . ." See also Conn. Const., art. I, § 19; General Statutes § 54-82f; *State* v. *Griffin*, 251 Conn. 671, 710, 741 A.2d 913 (1999).

"[Defense Counsel]: Have you ever had any interaction with police officers?

"[C]: No.

"[Defense Counsel]: Is there anything you think we should know that may affect you sitting on this particular jury?

"[C]: No."

At the conclusion of the individual voir dire, the state and the defendant accepted C as a juror. At that time, the defendant had not exhausted his peremptory challenges.

Following Mercado's testimony implicating the defendant in his assault, C sent a note to the court in which he stated: "Something came up, the last witness that was called, I know him from my church. I didn't recall his name at the beginning." The court immediately brought C forward for additional questioning outside of the presence of the other jurors. During this inquiry, C stated that he talked with Mercado "all the time" at church, that he knew Mercado "very well," that he knew Mercado was a police officer, that he had been uncomfortable during Mercado's testimony and that he doubted he still could be a fair juror. In response to additional questions from the court, however, C stated that he did not think his relationship with Mercado "should" or "would" affect his ability to be an impartial juror.[3] At the conclusion of this inquiry, the

[3] The following colloquy occurred:

"The Court: And you guys talk a lot?

"[C]: Yes, we do. At church we do.

"The Court: Oh—and based on that, you don't think you could be fair?

"[C]: I don't think I would—like I said, I wasn't feeling comfortable. When he was testifying, I wasn't feeling comfortable looking at him.

"The Court: Okay. Because you know who he was and—

"[C]: Yes.

"The Court: Are you going to tend to believe him more now that you know him from church?

"[C]: Not really, but I just don't feel comfortable.

defendant requested C's removal from the jury due to bias. The trial court denied this request, stating: "[C] absolutely said it would not in any [way] affect his ability in terms of the police officer's testimony one way or the other."

On appeal, the defendant claims that the trial court committed reversible error by permitting a juror who was not impartial to remain on the jury, thereby depriving the defendant of his constitutional right to trial by a fair and impartial jury. The state contends that the trial court reasonably exercised its discretion in denying the defendant's request to remove the juror and that the defendant failed to meet his burden of showing prejudice. We agree with the defendant.

Well established legal principles govern our analysis of the defendant's claim. "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the [c]onstitution lays down no particular tests and procedure is not chained to any ancient and artificial formula. . . . The trial court is vested with wide

"The Court: Well, uncomfortable, that's an interesting—so, you're not really going to—it's not going to affect your ability to be a juror in this case.
"[C]: I just wanted to let you know.
"The Court: I mean, I know that you're not comfortable because you know him, but are you going to lean in one direction over the other?
"[C]: I don't think I should. I don't think I would. I don't think I would. . . .
"The Court: Well let's follow up on this, because just not being comfortable is one thing. And even if you have to render a verdict and I don't know which way it's going to go, of course, are you going to be able to face him at church, and hold your head high no matter what you do?
"[C]: I should. I should.
"The Court: You don't particularly like to sit on a case because you know him from church, but that's about it?
"[C]: Right. That's it. That's it.
"The Court: Do you still want to continue being a juror in this case?
"[C]: Yes, I would."

discretion in determining the competency of jurors to serve, and that judgment will not be disturbed absent a showing of an abuse of discretion. . . . In exercising this discretion the trial court must zealously protect the rights of the accused." (Citations omitted; internal quotation marks omitted.) *State* v. *Cubano*, supra, 203 Conn. 88–89; see also *Wainwright* v. *Witt*, 469 U.S. 412, 429–30, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985); *Irvin* v. *Dowd*, 366 U.S. 717, 722–25, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961).

In this case, the defendant relies on the transcript of the inquiry into C's familiarity with Mercado to demonstrate that the court's failure to replace C with an alternate juror was an abuse of the court's discretion. The transcript is noteworthy in two respects. It manifests the juror's uncertainty about his reaction to Mercado's testimony at trial. Furthermore, it reveals the juror's presumably inadvertent earlier lack of candor, when, at voir dire, he had denied knowing Mercado or any other police officer.

In response, the state maintains that, in light of the totality of C's responses, the trial court reasonably could have concluded that C's contact with Mercado would not affect C's ability to remain impartial. The state emphasizes the role that personal observation plays in a trial court's assessment of a juror's demeanor.

As a preliminary observation, we note that C's initial responses, when he twice expressed doubts whether he still could be fair, stand in marked contrast with the court's ultimate conclusion that "[C] absolutely said it would not in any [way] affect his ability in terms of the police officer's testimony one way or the other." We further note that the phrasing of the court's questions during the inquiry might well have made it difficult for C to feel it appropriate to persist in his initial misgivings. For instance, the court asked him: "I mean I know that

you're not comfortable because you know [Mercado], but are you going to lean in one direction over the other?" Tellingly, rather than responding to these questions with an unabashed "yes" or an unequivocal "no," C answered with less than certainty, in this instance: "I don't think I should. I don't think I would." C's equivocation, the defendant maintains, at best suggests that he was unsure of his ability to judge the case impartially. We agree.

Although equivocal evidence ordinarily requires us to affirm rather than to question a trial court's exercise of its discretion, our case law about the right to an impartial jury counsels a different course here. In *State v. Esposito*, supra, 223 Conn. 299, the principal case on which the defendant relies, our Supreme Court stated: "Although . . . [t]he determination as to a potential juror's impartiality, in which demeanor plays an important part, is particularly within the province of the trial judge . . . there are limits to the deference we will afford such a judgment on appeal. . . . Because of . . . practical realities, a prospective juror's assessment of his or her own partiality must be carefully scrutinized on appeal and considered in the context in which it was uttered." (Citations omitted; internal quotation marks omitted.) Id., 310–11. In *Esposito*, a venireperson had acknowledged during voir dire that she felt uncomfortable with the defendant and that acquitting him would put her in an awkward position because she lived in the neighborhood where the charged crimes had occurred. At several other junctures during the voir dire, the venireperson had, however, assured defense counsel that she could be completely fair and objective. Id., 308. Relying on these assurances of evenhandedness, the trial court had overruled the defendant's challenge to excuse the venireperson for cause. On appeal, our Supreme Court reversed. It concluded that the trial court's ruling was an abuse of its

discretion because the personal nature of the juror's interest in the trial's outcome and her discomfort with the defendant "raise[d] a conclusive presumption of bias." Id., 310.

We find *Esposito* a compelling precedent in this case. Perhaps because the similarities are so striking, the state has not tried to distinguish it. In both cases, a juror disclosed personal experiences that presented a strong probability of coloring the juror's evaluation of the evidence at trial. In *Esposito*, the juror was being asked to set aside her feelings about her comfort level in her neighborhood. In this case, the juror was asked to set aside his feelings about his comfort level in his church. Indeed, the court here recognized that to be the issue when it asked C whether he would "be able to face [Mercado] at church and hold [his] head high no matter what you do." C's less than unequivocal response of "I should," was no more dispositive than less guarded assurances by the venireperson in *Esposito*.

Moreover, as in *Esposito*, the trial court also should have given greater consideration to C's repeated statements that, as a juror, he was uncomfortable while Mercado testified. As the defendant correctly notes in his brief on appeal, whereas the trial court explained that it was denying the request to excuse the juror "because the mere fact [that] he was a little uncomfortable is not enough for me to excuse him," the transcript reveals that C, in fact, never said that he was only "a little" uncomfortable. Rather, C stated that he knew Mercado "very well" from his church, that he talked to him "all the time," that he "wasn't feeling comfortable" during Mercado's testimony and, most importantly, that he did not think that he could still be fair. Under these particularly telling circumstances, removing C was the only course that was open to the court. We conclude, therefore, that the court's refusal to remove C from the

jury and replace him with an alternate was an abuse of its discretion.

To prevail in this appeal, however, it is not enough for the defendant to demonstrate that the trial court abused its discretion in declining to remove C from the jury. He also must demonstrate that the court's decision was so prejudicial as to entitle him to a new trial.

We turn again to *State* v. *Esposito*, supra, 223 Conn. 299, in which our Supreme Court underscored the constitutional role of peremptory challenges in our law. "The Connecticut constitution guarantees a criminal defendant the right to exercise peremptory challenges in the selection of his jury. Conn. Const., art. I, § 19, as amended by art. IV of the amendments to the constitution; see also General Statutes §§ 54-82g and 54-82h." *State* v. *Esposito*, supra, 313. Accordingly, the court concluded, in *Esposito*, that failure to excuse a juror for cause was reversible error because it had forced the defendant to use one of his limited number of peremptory challenges. Id.

"The purpose of voir dire is to facilitate [the] intelligent exercise of peremptory challenges and to help uncover factors that would dictate disqualification for cause." (Internal quotation marks omitted.) *State* v. *Griffin*, 251 Conn. 671, 699, 741 A.2d 913 (1999). In this case, had C disclosed originally that he regularly encountered Mercado at church and that he knew Mercado to be a police officer, it would have been entirely reasonable for the defendant to have asked the trial court to excuse this juror for cause.[4] At the very least,

---

[4] The record of the voir dire discloses that the trial court sua sponte excused a venireperson who admitted that he was friends with some police officers in Bridgeport, although he had not recognized any of the names of the officers announced as state's witnesses. The venireperson mused that he might more readily believe a police officer's testimony, but then he stated that he would "try real hard" to follow the court's instructions not to bring any preconceived notions into deliberation. At this point, the court, exercising its discretion, excused the venireperson, telling him: "All right. It's going to be a problem, you know police officers. . . . So, I'll excuse you."

timely knowledge of these facts would have afforded the defendant an opportunity to exercise his constitutional right to a peremptory challenge.[5] The record of the voir dire demonstrates that the defendant had used only three of his peremptory challenges prior to his individual voir dire of C.[6]

Due to the tardy disclosure of this valuable information, however, the possibility of exercising a peremptory challenge was no longer available to the defendant. We have no reason to doubt C's representation that, at voir dire, he had not recognized Mercado's name and had not recalled that his fellow churchgoer was a police officer. Nonetheless, the result of his nondisclosures was to deprive the defendant of his constitutional right to exercise a peremptory challenge to remove a possibly biased juror from the jury panel. As in *State* v. *Esposito*, supra, 223 Conn. 313, under these circumstances, we must presume prejudice and order a new trial.

The judgment of conviction is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[5] We do not decide whether the nature of the relationship between the juror and Mercado, in and of itself, required dismissal. Although we note that the American Bar Association has expressed a policy preference for the dismissal of potential jurors who have a personal or social relationship with a witness because such jurors "may be biased, or give the appearance of bias"; A.B.A., Standards for Criminal Justice: Discovery and Trial by Jury (3d Ed. 1996) standard 15-2.5, p. 160; in Connecticut, neither statute nor case law requires that such a relationship result in automatic dismissal for implied bias. "This court does not choose to create a set of unreasonably constricting presumptions that jurors be excused for cause due to certain occupational or other special relationships which might bear directly or indirectly on the circumstances of a given case . . . ." *State* v. *Clark*, 164 Conn. 224, 228, 319 A.2d 398 (1973).

[6] Two of these three venirepersons had relatives who had been police officers, and the third indicated that she might assign more credibility to a police officer's testimony.