DAVID NEAL SMITH *v.* COMMISSIONER OF
CORRECTION
(AC 29387)

Flynn, C. J., and Gruendel and Harper, Js.

Argued May 19—officially released August 11, 2009

*Frank C. Bartlett, Jr.*, special public defender, for the appellant (petitioner).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Brenda Hans*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, C. J. The petitioner, David Neal Smith, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying certification to appeal and that it improperly rejected his claim that his trial counsel had provided ineffective assistance. We disagree and dismiss the petitioner's appeal.

In *State* v. *Smith*, 69 Conn. App. 167, 796 A.2d 575, cert. denied, 260 Conn. 930, 798 A.2d 973 (2002), we upheld the petitioner's conviction of two counts of aggravated sexual assault in the first degree in violation of General Statutes § 53a-70a (a) (1), one count of kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a (a) and one count of being a persistent dangerous felony offender pursuant to General Statutes (Rev. to 1995) § 53a-40. On August 24, 2006, the petitioner filed a second amended petition for a writ of habeas corpus, alleging that his trial counsel had rendered ineffective assistance. Following a habeas

trial, the court rejected the petitioner's ineffective assistance of counsel claim and dismissed the petition for a writ of habeas corpus. Subsequently, the court also denied the petition for certification to appeal. This appeal followed.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits.

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Bloomfield* v. *Commissioner of Correction*, 111 Conn. App. 752, 756, 960 A.2d 1093 (2008), cert. denied, 290 Conn. 912, 964 A.2d 547 (2009).

"We examine the petitioner's underlying claim[s] of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by

the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Parrott* v. *Commissioner of Correction*, 107 Conn. App. 234, 236, 944 A.2d 437, cert. denied, 288 Conn. 912, 954 A.2d 184 (2008).

The petitioner claims that the court improperly denied his petition for certification to appeal following its rejection of his claim that his trial counsel had been ineffective in two ways. First, he claimed counsel was ineffective for not exercising a peremptory challenge to a specific juror, and, second, he claimed that counsel was ineffective for not objecting to testimony that allegedly went beyond permissible constancy of accusation testimony. We will consider each of these allegations in turn.

We first address the petitioner's contention that the court improperly rejected his claim that his trial counsel had rendered ineffective assistance because he had not exercised a peremptory challenge to a specific juror who had admitted that she lived in the petitioner's neighborhood and was familiar with him. The petitioner asserts that pursuant to *State* v. *Jurado*, 109 Conn. App. 628, 952 A.2d 812, cert. denied, 289 Conn. 937, 958 A.2d

1246 (2008), prejudice must be presumed "[w]here a potentially biased juror is allowed to sit on a jury . . . ." We conclude that counsel's performance was not deficient and that this is dispositive of the petitioner's claim.

During jury selection, a potential juror, R,[1] explained to the court and counsel, outside of the presence of other potential jurors, that she lived in the petitioner's neighborhood and that she had heard rumors about the petitioner. She did state, however, that she could keep an open mind about the case. After she left the courtroom, defense counsel challenged her for cause. The prosecutor said that she had no position and would need further inquiry before she would feel comfortable taking a position. Accordingly, the court stated that it would defer its ruling and allow further inquiry during voir dire. Later that day, R was subjected to individual voir dire, which involved, in part, the followed relevant colloquy:

"The Court: . . . Would you mind telling us a little bit of what you have heard about [the petitioner]?

"[The Juror]: Not at all. He does wonderful work with trees, yard work and cutting trees and things like that, and I have heard good things about the work he has done for neighbors and, I think, even for my husband.

"The Court: Okay. So, he may have done work on your property or your husband's other property or business?

"[The Juror]: I am trying to remember. Yeah, we have property across the street that we work there.

"The Court: Okay.

"[The Juror]: And as far as bad things go, only about some drunkenness.

---

[1] We identify the juror by initial only to protect her legitimate privacy interests. See *State* v. *Dorans*, 261 Conn. 730, 749 n.23, 806 A.2d 1003 (2002).

"The Court: Okay. And drunkenness in the neighborhood or in town or in a bar?

"[The Juror]: I heard things from neighbors, like, that sometimes he would come home loaded and his wife would not let him in the house and so he would sleep in the truck.

"The Court: Okay. And anything else that you heard negative about him?

"[The Juror]: Not really. . . .

"The Court: . . . But the fact that you have heard rumors that [the petitioner] from time to time may have come home, as you said, loaded, and also heard that maybe from time to time his wife would not let him in the house and he slept in the truck, would that in any way make it difficult for you to be a fair and impartial juror in this case?

"[The Juror]: I don't think so. My husband has come home loaded once in a while, and I wish I had left him locked out."

The court then asked R if she could keep an open mind even if there was evidence about the petitioner's drinking and whether she would be predisposed to believe certain things. R responded: "I think I could keep an open mind. I am sure I could. I do not believe that things that I hear through neighbors and stuff are true. I always would rather see something myself. I have never seen [the petitioner] drunk . . . [and I] have only known him as a good neighbor."

After the court concluded its questioning of R, the state indicated that it had no preliminary questions. Defense counsel then asked R whether she could refrain from telling other jurors about the rumors she had heard and whether those rumors would factor into her decision in the case. R responded: "No. Like I said, I do not

believe things that I hear. I only believe things that I see firsthand, and I have never seen [the petitioner] drunk and only know him in another light." The prosecutor then questioned R, asking several questions, including questions about her ability to keep things confidential, her ability to make up her own mind, her understanding of the state's burden of proof and the presumption of innocence and whether she would hold it against the petitioner if he did not testify. Following that questioning, the court asked the prosecutor and defense counsel, individually, whether they would accept R as a juror, to which each of them responded, "accepted."

During the petitioner's habeas trial, his trial counsel was called to testify. This testimony revealed that counsel initially had been concerned that R would be predisposed to certain negative beliefs about the petitioner but that, after voir dire, the petitioner indicated that he wanted to keep R on the jury and counsel thought it would be good strategy. The petitioner also testified at the habeas trial, and he offered nothing that contradicted his trial attorney's testimony in this regard.

Following the habeas trial, the court concluded that trial counsel had not been ineffective when he did not exercise one of his two remaining peremptory challenges on this juror and, instead, accepted R as juror number five in the petitioner's case. The court concluded, and we agree, that this was a matter of trial strategy, a strategy that the petitioner had requested after hearing what R had to say during voir dire. Because we agree that counsel's performance was not deficient, we do not reach the prejudice prong of the *Strickland* test. Our review of the record confirms the soundness of the court's decision, and, accordingly, we conclude that the court did not abuse its discretion.

The petitioner next argues that his trial counsel was ineffective because he failed to object to testimony from

two state police troopers, Jean Callaghan and Jennifer LaFlam, which allegedly "exceeded the bounds of permissible constancy of accusation testimony . . . ." We conclude that the petitioner has failed to prove that counsel's performance was deficient.

Both Callaghan and LaFlam testified regarding the content of their separate conversations with the victim concerning the crimes perpetrated against her by the petitioner, including details of the sexual assault. The habeas court specifically found that "the testimony may well have gone beyond the confines of *Troupe*." See *State* v. *Troupe*, 237 Conn. 284, 304, 677 A.2d 917 (1996) (en banc) (holding that constancy of accusation witness may testify as to fact and timing of victim's complaint but not as to details of complaint, and, if more details needed, testimony limited to details that associate victim's complaint with pending charge, such as time and place of attack or identity of alleged attacker). Nevertheless, the court found that counsel's decision not to object to this testimony was trial strategy made on the basis of the petitioner's identity defense. The court found that there was no deficient performance because counsel "quite reasonably [could] have concluded that objecting to a state police trooper's testimony about a victim's description of a rape, even if technically hearsay, would not benefit the petitioner and could only worsen the petitioner's cause with the jury." We agree with the habeas court.

The victim was the first witness to testify at the petitioner's trial, and she described the crimes perpetrated against her in detail. She also testified that she had relayed these details to several people, including Callaghan and LaFlam. The victim was extensively cross-examined by defense counsel as well. The state also presented, among other evidence, the testimony of Callaghan and LaFlam, both of whom offered explicit testimony as to what the victim had told them about the

assault and kidnapping. During closing arguments, defense counsel focused on the inconsistencies between the victim's testimony and the testimony of Callaghan, LaFlam and medical personnel, who had treated the victim following the attack.

During the habeas trial, defense counsel testified that the petitioner had told him that he did not commit these crimes and that it must have been some third person who looked like him and who drove a similar vehicle. Counsel also testified that the petitioner refused to pursue a consent defense.[2] Accordingly, the defense set forth was one of identity. However, the state had a strong case in that there was evidence that DNA analysis had confirmed that sperm found inside the victim's vagina contained genetic material that matched the DNA of the petitioner.

"[T]he decision of a trial lawyer not to make an objection is a matter of trial tactics, not evidence of incompetency. . . . [T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citation omitted; internal quotation marks omitted.) *Mitchell* v. *Commissioner of Correction*, 109 Conn. App. 758, 768–69, 953 A.2d 685, cert. denied, 289 Conn. 950, 961 A.2d 417 (2008). "Competent representation is not to be equated with perfection. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

---

[2] Contrary to defense counsel's testimony, the petitioner testified during the habeas trial that, although he initially denied knowing the victim, he told his attorney at trial that he did know the victim, that they had engaged in consensual sexual intercourse on the night of the alleged attack and that they had continued in a sexual relationship even after the alleged attack. He explained that he thought he did not know her because he did not know her name. Defense counsel denied that the petitioner ever told him this, and counsel stated that he would have put forth a defense of consent had the petitioner advised him of these facts.

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citation omitted; internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction,* 80 Conn. App. 792, 798–99, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz,* 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004).

Our review of the record leads us to agree with the habeas court that trial counsel's decision not to object to the trooper's testimony did not amount to deficient performance. The defense set forth by the petitioner was one of identity, and, because there existed DNA evidence that tended to prove that he recently had deposited sperm inside of the victim, the only reasonable strategy for defense counsel was to call into question the credibility of the victim and her version of the events in an attempt to raise some measure of reasonable doubt in the mind of the jurors. Credibility can be attacked by showing inconsistencies between statements made at trial and statements made to others, like Callaghan and LaFlam. Accordingly, we conclude that the habeas court properly concluded that defense counsel's decision not to object to the testimony of Callaghan and LaFlam was an exercise of sound trial strategy made in light of the theory of defense set forth at trial.

On the basis of the foregoing analysis, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.