### ROY SASTROM *v.* GARRELL MULLANEY
### (SC 18027)

Katz, Palmer, Vertefeuille, Zarella and Schaller, Js.

Argued January 7—officially released April 29, 2008

*Robert E. Byron*, special public defender, for the appellant (petitioner).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Timothy J. Liston*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

VERTEFEUILLE, J. The petitioner, Roy Sastrom, appeals from the judgment of the habeas court denying

his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly rejected his claim that his trial attorney had rendered ineffective assistance of counsel by failing to challenge the trial court's judgment of acquittal by reason of mental disease or defect. We affirm the judgment of the habeas court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. Between October, 1992, and November, 1993, Raymond Berchem received four letters of a threatening nature. Each letter was signed with the petitioner's name and bore the return address of the Connecticut correctional institution in Somers, where the petitioner was incarcerated. The first two letters, which were sent a few weeks apart from each other, were sent to Berchem's business address in Bridgeport. Both letters demanded $500 from Berchem, and threatened bodily harm if he failed to comply. Berchem received the third and fourth letters in April and November, 1993, respectively. Both letters demanded $50,000 and also threatened Berchem and his family with bodily harm if he failed to comply. The third letter was sent to Berchem's business address, but the November, 1993 letter was sent to Berchem's home address in Shelton, a fact that particularly distressed Berchem.

Berchem informed the police of his receipt of these letters, and they subsequently conducted an investigation. In connection with the investigation, Officer Joseph Masson, a member of the Connecticut state police, questioned Sastrom at the Somers correctional facility. The petitioner denied knowing Berchem, but admitted that he knew Berchem's former wife. The petitioner denied any knowledge of the letters Berchem had received. For purposes of comparing the petitioner's handwriting to the letters Berchem had received, Masson procured from correction officials handwritten doc-

uments by the petitioner. Handwriting analysis revealed that these samples and the letters received by Berchem were written by the same person.

The petitioner subsequently was charged in two substitute informations with four counts of harassment in the first degree in violation of General Statutes § 53a-182b (a), four counts of threatening in violation of General Statutes (Rev. to 1993) § 53a-62 (a) (2), and four counts of criminal attempt to commit larceny in the first degree by extortion in violation of General Statutes §§ 53a-122 (a) (1), 53a-119 (5) (a) and 53a-49 (a) (2).[1] The petitioner pleaded not guilty and elected to be tried by the court. The petitioner also filed an affirmative defense of mental disease or defect pursuant to General Statutes § 53a-13 (a).[2]

At his criminal trial, which was held in 1994, the petitioner called only one witness: Walter Borden, a psychiatrist who had examined him. Borden testified that although the petitioner was competent to stand trial and understood the charges he faced, he suffered from a mental disease known as "severe personality disorder, borderline type," also known as "latent schizophrenia."[3] Borden testified that, as a result of this dis-

---

[1] We note that technical changes, not relevant to this appeal, have been made to §§ 53a-182b (a) and 53a-122 (a) (1) since the time of the petitioner's offenses. See Public Acts 1995, No. 95-143, § 1; Public Acts 2000, No. 00-103, § 1. For purposes of convenience, we refer to the current revision of those statutes. We also note that in 2001, the offense of threatening under § 53a-62 was renamed threatening in the second degree. See Public Acts 2001, No. 01-2, § 8.

[2] General Statutes § 53a-13 (a) provides: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."

[3] Although severe personality disorder, borderline type, was Borden's principal diagnosis of the petitioner, Borden noted that his findings indicated that the petitioner also suffered from the following disorders: "antisocial personality disorder, depression and . . . a learning disability with perceptual impairments."

ease, the petitioner "could not conform his conduct to the requirements of the law," although he understood the wrongfulness of his acts. Borden further testified that at the time the petitioner wrote the letters to Berchem, the petitioner "was hallucinating, hearing voices . . . the voices were telling him . . . [to] harm himself in some way." Borden described the nature of the petitioner's hallucinations, stating that one way in which the voices told the petitioner to harm himself "was to increase his sentence, that he should spend the rest of his life in prison and preferably that he suffer at the same time. And . . . the voices told him that if he wrote those letters that he would get a longer sentence and that he was commanded to do that." After hearing the evidence, the trial court found that sufficient evidence existed to "prove the allegations beyond a reasonable doubt, particularly . . . the extortion charges . . . ." The court also concluded that the petitioner had proven his defense pursuant to § 53a-13, and consequently found the petitioner not guilty by reason of mental disease or defect. Following the petitioner's acquittal, the trial court ordered, pursuant to General Statutes § 17a-582 (a), that the petitioner be committed to the custody of the commissioner of mental health (commissioner)[4] for a term of forty years, subject to periodic review by the psychiatric security review board.

The petitioner commenced this habeas corpus action in December, 2003, and on March 1, 2006, he filed a third amended petition for a writ of habeas corpus challenging his continued detention in the custody of the commissioner, naming as the respondent, Garrell Mullaney, chief executive officer of the Connecticut Valley Hospital, where the petitioner was committed.

---

[4] References to the commissioner of mental health in § 17a-582 were changed in 1995 to the commissioner of mental health and addiction services. See Public Acts 1995, No. 95-257, § 11. For purposes of convenience, we refer to the current revision of the statute.

The petitioner alleged that his confinement was illegal because he had been denied the effective assistance of counsel at trial.[5] He claimed that his trial attorney was ineffective because although the state failed to present sufficient evidence to prove beyond a reasonable doubt the element of intent for the offense of attempt to commit larceny, the petitioner's counsel "did not object [to the verdict] . . . did not file a motion to set aside . . . [or] take an appeal." More specifically, the petitioner asserted that the state had not presented evidence to show that he had the "means, will, or intent to take any overt act[ion]" against Berchem, and that Borden's testimony that the petitioner had written the letters at issue "to appease voices in his mind" established that "the petitioner did not have the specific intent to commit larceny." (Internal quotation marks omitted.)

Following a hearing, the habeas court rejected the petitioner's claim. The court concluded that "the cumulative effect of the evidence overwhelmingly shows that the trial court reasonably could have found that the essential elements of [attempt to commit larceny in the first degree] were proven beyond a reasonable doubt." Consequently, the petitioner did not sustain his burden under *Strickland* v. *Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), of showing that he failed to receive effective assistance of counsel at trial. Accordingly, the court denied the habeas petition. The petitioner thereafter petitioned for certification to appeal from the decision of the habeas court, however, the habeas court did not act on this petition.[6] The petitioner then appealed from the judgment of the habeas court to the Appellate Court, and we transferred the

---

[5] The petitioner specifically challenged his acquittal by reason of mental disease or defect of the four counts of criminal attempt to commit larceny in the first degree by extortion.

[6] A handwritten notation by the court on the petition for certification stated: "No action required. No underlying criminal conviction." See General Statutes § 52-570 (b).

appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

In this appeal, the petitioner asserts that the habeas court improperly denied his petition for a writ of habeas corpus after concluding that his trial counsel had not rendered ineffective assistance in securing an acquittal by reason of mental disease or defect on the petitioner's behalf. Specifically, the petitioner contends that the trial court's statement that the petitioner intended to harm himself by sending the threatening letters to Berchem negated the specific intent required to prove attempt to commit larceny. Consequently, the petitioner asserts, the habeas court improperly concluded that he was not denied the effective assistance of counsel at trial when his attorney failed to challenge the trial court's ruling that the state had proven the allegations asserted beyond a reasonable doubt. The respondent claims in response that the habeas court correctly concluded that the petitioner's trial attorney failed to challenge his acquittal by reason of mental disease or defect on the ground of insufficient evidence. We agree with the respondent.

At the outset, we set forth the standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citation omitted.) *Duperry* v. *Solnit*, 261 Conn. 309, 335, 803 A.2d 287 (2002).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, supra, 466 U.S. 686. This right arises under the sixth and fourteenth amendments to the United States

constitution and article first, § 8, of the Connecticut constitution." *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 153, 662 A.2d 718 (1995). As enunciated in *Strickland* v. *Washington*, supra, 687, this court has stated: "It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 525, 903 A.2d 169 (2006). Put another way, the petitioner must demonstrate that his attorney's representation "was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 460, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006). In assessing the attorney's performance, "we indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks omitted.) Id. "To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 525.

We next provide a brief overview of the legal implications of a defendant's assertion of the affirmative defense of mental disease or defect pursuant to § 53a-13. A defendant's claim that a mental disease or defect deprived him of the capacity either to appreciate the

wrongfulness of his conduct or to control his conduct within the requirements of the law potentially absolves him of criminal responsibility for his actions. In such a case, the defendant effectively "admit[s] his commission of the crime," and bears the burden of establishing the affirmative defense of mental disease or defect. *State* v. *Connelly*, 46 Conn. App. 486, 495, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998). A plea of not guilty by reason of mental disease or defect is different from a plea of guilty, however, because "the [s]tate still has an obligation to present a prima facie case sufficient to convince the triers of fact beyond a reasonable doubt that the defendant performed the acts alleged." (Internal quotation marks omitted.) *Duperry* v. *Solnit*, supra, 261 Conn. 328. Nevertheless, "the insanity plea is more like a plea of guilty than it is like a plea of not guilty since, while not relieving the [s]tate of all burden to prove that the defendant performed the acts charged, the insanity plea lessens that burden considerably as a practical matter by barring the defendant from contesting or impeaching the [s]tate's proof and from presenting other evidence that could counter that proof." (Internal quotation marks omitted.) Id. If the defendant succeeds in establishing the affirmative defense pursuant to § 53a-13, the defendant "is not criminally responsible for his unlawful conduct," and any confinement that follows is not punitive in nature and is designed "to treat the individual's mental illness and protect him and society from his potential dangerousness." *Connelly* v. *Commissioner of Correction*, 258 Conn. 374, 387, 780 A.2d 890 (2001).

We next consider the petitioner's claim that Borden's testimony effectively negated the specific intent required to prove attempted larceny in the first degree. As we have noted previously, by maintaining an affirmative defense pursuant to § 53a-13, the petitioner "admit-

ted his commission of the crime." *State* v. *Connelly*, supra, 46 Conn. App. 495. Such an admission necessarily implies that the petitioner also concedes that each of the individual elements comprising the offense is satisfied, one of which is specific intent. The petitioner's assertion of an affirmative defense pursuant to § 53a-13 therefore precluded him from presenting evidence with the goal of rebutting the state's prima facie case. *Duperry* v. *Solnit*, supra, 261 Conn. 328. Thus, as a procedural matter, Borden's testimony could not have impeached the state's proof that the defendant had committed the crime of attempted larceny in the first degree.

In addition, the petitioner's claim mischaracterizes Borden's testimony. Borden's testimony was offered not with regard to the petitioner's intent to commit the crime of attempted larceny in the first degree, but, rather, with regard to his mental disease.[7] The petitioner's claim that Borden's testimony impacted the petitioner's mental status as it relates to the elements of a particular criminal offense conflates the "analytic distinction [that exists] between mental status as it relates to the insanity defense and mental status as it relates to intent to engage in criminal conduct." *State* v. *Joyner*, 225 Conn. 450, 460–61, 625 A.2d 791 (1993). We note that our law precludes a psychiatrist in Borden's position from testifying about the petitioner's mental state as it relates to the crime with which the petitioner is charged. See General Statutes § 54-86i ("[n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state

---

[7] Indeed the petitioner seems to concede this point in his brief: "Borden could only, and did only, testify as to his diagnosis of mental state or condition. He could not, and he did not, state an opinion or an inference as to whether the [petitioner] did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto . . . ." (Internal quotation marks omitted.)

an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto"). At trial, Borden testified, in language that closely mirrored the language of § 53a-13 itself, that certain mental abnormalities caused the petitioner to experience auditory hallucinations, the result of which was that he "could not conform his conduct to the requirements of the law." Borden was careful to note, however, that the petitioner actually did "under[stand] the wrongfulness" of his behavior. Thus, Borden's testimony did not address the petitioner's intent in sending Berchem the threatening letters, but, rather, addressed the question of whether the petitioner suffered from a mental defect that deprived him of the capacity to conform his conduct to the requirements of the law. See *State* v. *Joyner*, supra, 225 Conn. 464 (noting that "sanity . . . is an independent fact and not an element of any existing criminal offense" [citations omitted]).

We therefore conclude that the habeas court properly determined that the performance of the petitioner's trial attorney did not constitute ineffective assistance of counsel. The petitioner failed to demonstrate that the attorney's representation "fell below an objective standard of reasonableness" as required to satisfy the "performance" prong of the *Strickland* test for ineffective assistance of counsel. *Ledbetter* v. *Commissioner of Correction*, supra, 275 Conn. 460; see *Strickland* v. *Washington*, supra, 466 U.S. 687 (requiring petitioner to satisfy both performance and prejudice prongs to prevail on claim for ineffective assistance of counsel).

The judgment is affirmed.

In this opinion the other justices concurred.