# RANDALL SAUNDERS *v.* COMMISSIONER OF CORRECTION
## (AC 33425)

Gruendel, Beach and Sheldon, Js.

Argued April 25—officially released August 14, 2012

*Randall B. Saunders*, pro se, the appellant (petitioner).

*Kathryn Ward Bare*, assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Randall Saunders, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. He claims that the court (1) erred by concluding that he had procedurally defaulted on his claims of prosecutorial impropriety, (2) erred by rejecting his claims of ineffective assistance of trial and appellate counsel, and (3) abused its discretion in denying his petition for certification to appeal. We dismiss the appeal.

The facts underlying the petitioner's conviction, as noted by our Supreme Court in its opinion regarding

the petitioner's direct appeal, are as follows. "On January 26, 1997, the [petitioner] and his girlfriend, Susan Bruemmer, went to Tortilla Flat, a restaurant and bar in Danbury, after having spent the previous several hours drinking at another bar. The two remained at Tortilla Flat during the Super Bowl and continued to drink. As the [petitioner] and Bruemmer were getting ready to leave after the end of the game, Bruemmer approached the victim, Dominic Badaracco, Jr., who was seated at the bar, and struck up a conversation with him. Bruemmer was acquainted with the victim because she previously had dated his brother. The conversation soon escalated into an argument, which culminated in Bruemmer's throwing a drink in the victim's face.

"The victim then called out to the [petitioner] that he had 'better contain [his] bitch.' The [petitioner] drew a handgun, approached the victim, and placed the barrel of the gun against the victim's head or neck. A fight ensued between the [petitioner], who is approximately six feet, five inches tall and 220 pounds, and the victim, who was approximately six feet, two inches tall and 230 pounds. The two men proceeded to fight. During the fight, which lasted only a short time, the victim punched the [petitioner] in the face. As a result, the [petitioner] suffered minor injuries including a bloody nose and some cuts and abrasions on his face. The victim's shirt was torn, and a gold chain that he had been wearing around his neck was broken. . . .

"Bethany McKnight, a bartender, heard someone in the bar yell 'there's a gun . . . .' McKnight went into the kitchen to call 911 but discovered that Paula Keeler, the sister-in-law of Dennis Keeler, one of the owners of Tortilla Flat, already had made the call. Dennis Keeler also entered the kitchen to confirm that the police had been called. By this time, the [petitioner] had entered the kitchen from the bar area. Dennis Keeler noticed that the [petitioner] was holstering his weapon.

McKnight and Paula Keeler asked the [petitioner] whether he had been shot and if he wanted them to call for an ambulance. The [petitioner] smiled and said no. Paula Keeler thereafter left the kitchen and went upstairs. At this time, the [petitioner] was located within fifteen feet of a door leading to the outside of the restaurant.

"The victim, who had remained in the bar area, headed toward the kitchen. As the victim approached the kitchen doorway, he kicked a garbage can, stopped near the doorway and, according to Dennis Keeler, shouted to the [petitioner] that 'if he [the petitioner] ever pulled a gun on him again he'd kill him.' The victim then continued to move toward the [petitioner]. Dennis Keeler asked the victim 'to stop, to let it go . . . .' The victim did not heed Keeler's request, however, and continued to advance in the direction of the [petitioner].

"By this time, the [petitioner] was leaning against a stove, wiping blood from his face. McKnight, who had remained in the kitchen, testified that the [petitioner] pulled out his handgun and 'just calm [sic] as a cucumber . . . started firing.' The [petitioner] discharged all five of the bullets from his gun. The victim was struck by four of the five bullets, three of which entered through his back. The other bullet struck the victim in the left arm, near the armpit. The police soon arrived and arrested the [petitioner]. The victim subsequently died as a result of one or more gunshot wounds." *State v. Saunders*, 267 Conn. 363, 366–68, 838 A.2d 186, cert. denied, 541 U.S. 1036, 124 S. Ct. 2113, 156 L. Ed. 2d 722 (2004).

Initially, the petitioner was charged with and tried for murder in violation of General Statutes § 53a-54a. After the jury could not reach a unanimous verdict, the trial court, *Moraghan, J.,* declared a mistrial. The petitioner was retried under a substitute information

charging him with manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55a (a) and 53a-55 (a) (1) and (3).[1] The petitioner was found guilty of manslaughter in the first degree in violation of §§ 53a-55a (a) and 53a-55 (a) (3). The petitioner was sentenced to twenty-seven years incarceration. The petitioner unsuccessfully appealed his conviction. Id., 365–66.

In his amended petition for a writ of habeas corpus, the petitioner alleges that both his trial counsel and his appellate counsel rendered ineffective assistance in various ways, and also alleges prosecutorial impropriety. The court denied the petition. The petitioner filed a petition for certification to appeal, which the court denied. This appeal followed.

"When confronted with a denial of certification to appeal, we must determine whether this ruling constituted an abuse of discretion. . . . A petitioner satisfies that substantial burden by demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . If the petitioner can show that the habeas court abused its discretion in denying the petition for certification to appeal, then the petitioner must demonstrate that the judgment of the habeas court should be reversed on its merits. . . . To determine whether the court abused its discretion, we must consider the merits of the petitioner's underlying claims." (Internal quotation marks omitted.) *Greene* v. *Commissioner of Correction*, 123 Conn. App. 121, 126–27, 2 A.3d 29, cert. denied, 298 Conn. 929, 5 A.3d 489 (2010), cert. denied sub nom. *Greene* v. *Arnone*, 563 U.S. 1009, 131 S. Ct. 2925, 179 L. Ed. 2d 1248 (2011).

---

[1] The same attorney represented the petitioner in both criminal trials.

## I

The petitioner's first claim concerns the court's conclusion that he had procedurally defaulted as to his claims of prosecutorial impropriety. Specifically, the petitioner argues that the court incorrectly found that he did not file a reply to the defense of procedural default that had been filed by the respondent, the commissioner of correction, and improperly concluded that the petitioner's claims were not reviewable. We disagree.

With respect to the petitioner's claims of prosecutorial impropriety, the court found and concluded as follows: "In his amended petition, the petitioner alleges numerous acts of prosecutorial impropriety. In the return to the petition, the respondent raised the defense of procedural default as to the petitioner's claim of prosecutorial impropriety on the ground that the petition failed to raise it on direct appeal. The petitioner did not file a reply. . . . There is no dispute that the petitioner did not raise a claim of prosecutorial impropriety on direct appeal. Accordingly, this claim is subject to procedural default. Since the respondent raised the defense of procedural default in the return, the burden shifted to the petitioner to allege and prove cause and prejudice. The petitioner has neither alleged nor proven cause and prejudice to overcome the default. Consequently his claim of prosecutorial impropriety is not directly reviewable by this court." (Citations omitted.)

"When a respondent seeks to raise an affirmative defense of procedural default, the rules of practice require that he or she must file a return to the habeas petition alleg[ing] any facts in support of any claim of procedural default . . . or any other claim that the petitioner is not entitled to relief. Practice Book § 23-30 (b). If the return alleges any defense or claim that

the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition, the petitioner shall file a reply. Practice Book § 23-31 (a). The reply shall allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default. Practice Book § 23-31 (c). . . .

"The appropriate standard for reviewability of [a procedurally defaulted claim] . . . is the cause and prejudice standard. Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition. . . . [T]he cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance . . . . Once the respondent has raised the defense of procedural default in the return, the burden is on the petitioner to prove cause and prejudice. . . . [When] no evidence [of cause and prejudice] has been provided [to the habeas court], [the reviewing] court can independently conclude that the petitioner has failed to meet the cause and prejudice test." (Citation omitted; internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 114 Conn. App. 778, 787, 971 A.2d 766, cert. denied, 293 Conn. 915, 979 A.2d 488 (2009).

The petitioner is correct in his assertion that the court incorrectly stated that he had not filed a reply to the respondent's defense of procedural default. In his reply, the petitioner stated that he was relying on his claims of "ineffective assistance counsel, ineffective assistance of appellate counsel and prosecutorial impropriety to constitute both cause and prejudice . . . ." The habeas court correctly concluded, however, that the petitioner's claim of prosecutorial impropriety was procedurally defaulted. The petitioner failed to allege or to

prove facts to support a finding of cause and prejudice. Furthermore, the habeas court rejected the petitioner's claims of ineffective assistance of counsel,[2] and, thus, his claims of ineffective assistance cannot provide the basis for cause and prejudice.

## II

The petitioner next claims that the court improperly rejected some of his claims of ineffective assistance of trial and appellate counsel. We address these claims in turn.

"A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . Put another way, the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citations omitted; internal quotation marks omitted.) *Sastrom* v. *Mullaney*, 286 Conn. 655, 662, 945 A.2d 442 (2008). "A reasonable probability is one [that] is sufficient to undermine confidence in the result." (Internal quotation marks omitted.) *Borrelli* v. *Commissioner of Correction*, 113 Conn. App. 805, 810, 968 A.2d 439 (2009).

---

[2] In his amended petition, the petitioner alleged thirty-one counts of ineffective assistance of trial counsel. The court reviewed only those allegations as to which the petitioner presented evidence. The petitioner challenged some of those rulings on appeal.

## A

The petitioner claims that the court improperly rejected his claim that his trial counsel rendered ineffective assistance for failing to present evidence of a sixth bullet, which the petitioner alleges was fired at him by the victim. We disagree.

The following additional facts, as found by the habeas court, are relevant to this claim. The petitioner's gun carried only five bullets. The petitioner testified that he shot the victim five times because he thought the victim was reaching for a weapon, but admitted on cross-examination that he did not see a weapon. Roger Brooks, a police detective who led the team that processed the evidence in the petitioner's case, testified that seven projectiles or bullet fragments were collected during the investigation: four from the crime scene and three from the medical examiner. From the evidence collected, five complete bullets were identified, and all were identified as having been fired from the petitioner's gun. No other bullets were identified. All of the eyewitnesses who testified at the criminal trial testified that they never saw the victim with a gun.

The court determined that there was no credible evidence of a sixth bullet. The court noted that trial counsel could not be faulted for failing to present nonexistent evidence. The court noted that Brooks testified that the petitioner's exhibit 26, which the petitioner argued depicted the sixth bullet, was collected and logged as item number one in the evidence log. The court concluded that the petitioner had not met his burden of establishing deficient performance.

On appeal, the petitioner argues that the projectile depicted in the petitioner's exhibit 26 is the sixth bullet, a bullet that had not been collected by the police but nevertheless was found in the victim's clothing after all other bullets had been collected. He argues that the

court erred in determining that the projectile in the petitioner's exhibit 26 was collected and logged as item one in the evidence log and further erred in concluding that there was no credible evidence that a sixth bullet existed.

The habeas court credited Brooks' testimony that the petitioner's exhibit 26 had been collected and logged as item number one in the evidence log. The court further credited testimony that five complete bullets were identified, and all had been fired from the petitioner's gun; no other bullets were identified. The court's findings are not clearly erroneous. The court determined that there was no credible evidence of a sixth bullet, and we cannot retry the court's credibility determinations. "[T]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Douros* v. *Commissioner of Correction*, 111 Conn. App. 525, 528–29, 959 A.2d 1041 (2008). The court correctly concluded that trial counsel was not deficient for failing to present evidence of a sixth bullet in light of the fact that the petitioner did not present credible evidence as to its existence.

B

The petitioner next asserts that the court improperly rejected his claim that trial counsel rendered ineffective assistance for failing to object to 911 tapes that were admitted as state's exhibit 69 during his criminal trial. We disagree.

In his amended petition, the petitioner claimed that his trial counsel rendered ineffective assistance at the

second criminal trial by failing to object to the admission of state's exhibit 69, tape recordings of the 911 transmissions from Tortilla Flat, when it was clear that the transmissions had been tampered with. The court rejected this claim, reasoning that there was no credible evidence that someone had tampered with the 911 tape recordings.

We defer to the court's determination as to credibility. See *State* v. *Garcia*, 299 Conn. 39, 52, 7 A.3d 355 (2010). Because there was no credible evidence that the tapes had been tampered with, the petitioner cannot then prove that his trial counsel's performance was deficient for failing to object to the admission of the tapes on the basis that they had been tampered with. See *Smith* v. *Commissioner of Correction*, 116 Conn. App. 383, 391, 975 A.2d 751 ("[T]he decision of a trial lawyer not to make an objection is a matter of trial tactics, not evidence of incompetency. . . . [T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." [Internal quotation marks omitted.]), cert. denied, 293 Conn. 925, 980 A.2d 912 (2009).

C

The petitioner next appears to argue that the court improperly rejected his claim that his trial counsel rendered ineffective assistance for failing to object to the substitute long form information that charged him conjunctively with manslaughter in the first degree with a firearm in violation of §§ 53a-55a (a) and 53a-55 (a) (1), *and* in violation of §§ 53a-55a (a) and 53a-55 (a) (3). We disagree.

Section 53a-55a (a) provides in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first

degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ." Section 53a-55 provides in relevant part: "(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

In the petitioner's second criminal trial, the prosecutor filed a substitute long form information that stated, in pertinent part: "In the Superior Court of the state of Connecticut, [the senior assistant state's attorney] . . . accuses [the petitioner] of manslaughter in the first degree with a firearm and charges that . . . [the petitioner], while using a revolver with the intent to cause serious physical injury to another person, did cause the death of such other person, Dominic Badaracco, in violation of [§§] 53a-55 (a) (1) and 53a-55a (a). . . . AND further charges that . . . [the petitioner], while using a revolver under circumstances evincing an extreme indifference to human life, recklessly engaged in conduct which created a grave risk of death to another person, Dominic Badaracco, and thereby caused the death of such other person, Dominic Badaracco, in violation of [§§] 53a-55 (a) (3) and 53a-55a (a)."

The court determined that subdivisions (1) and (3) of § 53a-55 (a) do not constitute separate offenses for charging purposes, but rather describe alternative means of committing a single crime. The court cited *State* v. *Wohler*, 231 Conn. 411, 650 A.2d 168 (1994), for the proposition that "[a] charging document may

properly allege, conjunctively, in one count, several statutory methods of committing a single offense." (Internal quotation marks omitted.) Id., 415. The court determined that the petitioner could not prevail on his claim of ineffective assistance because there was no reason for his trial counsel to object to the substituted long form information. The court noted that "[t]he only difference between the two subsections is the requisite mental state; subsection (1) requires a more culpable mental state than subsection (3). Despite this difference, the subsections are not so dissimilar as to constitute separate offenses. See *State* v. *Tanzella*, 226 Conn. 601, 613, 628 A.2d 973 (1993) (holding that although subsections [1] and [2] of General Statutes § 53a-61 [a] require a different mental state and degree of harm they are 'simply different means of committing the same crime, namely, assault in the third degree')."

The petitioner argues that the court erred in determining that § 53a-55 (a) (1) and (3) are not separate offenses and that they can be combined in a single count. The petitioner also argues that the court erred in relying on *State* v. *Wohler*, supra, 231 Conn. 411, and *State* v. *Tanzella*, supra, 226 Conn. 601, in its analysis because those cases are factually distinguishable from the present case.

The court correctly determined that counsel's performance was not deficient. Trial counsel had no reason to object because the state's long form information was proper. We agree with the court's conclusion that § 53a-55 (a) (1) and (3) are not separate offenses for charging purposes. We agree with the court's reliance on *State* v. *Wohler*, supra, 231 Conn. 415, for the proposition that a charging document may properly allege several statutory methods of committing a single offense. Although subsection (1) requires specific intent and subsection (3) requires a reckless mental state, that difference does not in itself render them separate

offenses. By analogy, *State* v. *Tanzella*, supra, 226 Conn. 601, provides support for the proposition as well.

## D

The petitioner also claims that the court improperly rejected his claim that his trial counsel rendered ineffective assistance by failing to object to jury instructions. Specifically, the petitioner argues that when the court instructed the jury to "[d]ecide one of them," it essentially instructed the jury to deliberate until it found him guilty of either intentional or reckless manslaughter in the first degree.

The following additional facts are relevant. The court instructed the jury that "[the petitioner] is charged in a long form information . . . with one count. One count, meaning one charge. He's charge[d] with manslaughter in the first degree with a firearm in violation of the appropriate Connecticut General Statutes. He is charged in this one count with committing manslaughter in the first degree . . . . [T]he state alleges alternative methods of committing this one crime. It's one count, alternative methods of committing the one crime." The court further explained: "Your verdict on either alternative must be unanimous. If you decide on the intent, it must be unanimous. Or if you decide on the reckless portion, it must be unanimous. All your verdicts must be unanimous. You do not need to decide clearly both of them, just decide one. Either intent based upon your view of the evidence and the law or the reckless based on your view of the evidence and the law. Decide one of them. Again, the scenarios with the lesser include[d]s. If you are unanimous, not guilty on the first count, you consider manslaughter in the second degree. [If] you are unanimous not guilty, then you consider criminally negligent homicide as the lesser included. Any guilty unanimous verdict ends the deliberations immediately."

The habeas court determined that the trial court's instruction was not improper in context. The court further stated that a note from the jury to the court revealed that the jury found the petitioner not guilty with respect to the charge of intentional manslaughter in the first degree with a firearm, but found him guilty of reckless indifference manslaughter in the first degree. The court noted that, although it had not been necessary for the jury to decide both allegations, it nonetheless did. The habeas court concluded that even if the trial court's instruction was improper, the petitioner suffered no prejudice. On this record, our confidence in the verdict is not undermined by a possibly confusing portion of the charge.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The

test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Heinemann,* 282 Conn. 281, 300, 920 A.2d 278 (2007).

Reviewing the charge as a whole, we do not conclude that the court instructed the jury to deliberate until it found the petitioner guilty. Although the court instructed the jury to "decide one," it stated that if the jury found the petitioner not guilty of intentional manslaughter, then it should consider negligent manslaughter. The court further instructed that a guilty verdict would end deliberations. The court again stated that "if you find the [petitioner] not guilty of manslaughter in the first degree, I don't know if that's your decision, but this is the scenario. If you do that, then you then consider the lesser included offense. Clearly, if you find the other way, that the [petitioner] is guilty of the first count of the only count of the information, then your deliberations cease. If you find him not guilty of the first count, manslaughter in the first degree, then you consider . . . what we call the lesser included offenses in that same count. And that is manslaughter in the second degree." The court also instructed that the petitioner is presumed to be innocent until proven guilty beyond a reasonable doubt.

Furthermore, the petitioner cannot prove that he was prejudiced as a result of the court's instruction. The record reflects that the jury reached a unanimous verdict on both intentional and reckless manslaughter: it found him not guilty of manslaughter in the first degree with a firearm and found him guilty of reckless manslaughter.

E

The petitioner next claims that the court improperly rejected his claim that his trial counsel rendered ineffective assistance for failing to object to a subpoena duces

tecum issued to the person holding the petitioner's power of attorney during the petitioner's first criminal trial. We disagree.

The following additional facts, as found by the habeas court, are relevant to this claim. During the petitioner's first criminal trial, the prosecutor caused a subpoena duces tecum to be served on Patricia Joy. The subpoena directed her to bring with her to court a broad array of documents. Although she held a number of the petitioner's documents, she was not a part of the petitioner's legal team or an expert hired by the petitioner's attorney. During a colloquy regarding the prosecutor's request to look at the documents Joy had brought with her, the prosecutor said that Joy might have possessed evidence such as inculpatory letters written to her by the petitioner. The habeas court determined that the petitioner's trial counsel had attempted to challenge the subpoena as overly broad, but the trial court had held that he had no standing to challenge the subpoena. The court allowed the prosecutor to take possession of the documents. The prosecutor returned the documents to Joy the day after receiving them and represented to the trial court that he had no intention of using any of them. The habeas court found that there was no credible evidence that the prosecutor had used any of the documents. The court concluded that even if trial counsel could have done more to object to the subpoena, the petitioner's case did not suffer any prejudice from his failure to do so.

During the petitioner's first criminal trial, the state asked the court for permission to take possession of the boxes of documents that had been subpoenaed from Joy. The following colloquy occurred:

"[Defense Counsel]: Your Honor, I would ask to see the subpoena and since maybe that subpoena is overbroad.

"The Court: Maybe you have no standing to challenge it.

"[Defense Counsel]: I probably don't, but I do have—

"The Court: Then, that's it, you don't have any challenges. You're not representing her, are you?

"[Defense Counsel]: No. I would ask for an offer of proof, though, as to why—

"The Court: No. Have her come in, please."

The court asked Joy about the subpoena, to which question she responded that she thought that the subpoena was very broad. The prosecutor noted that the subpoenaed material may have contained information given by Saunders to Joy regarding his version of events and that he wanted to review the documents before Joy testified. Defense counsel noted that "I think what's going to happen, as a result of all of this . . . based upon my review of these files, is that there were numerous federal lawsuits filed . . . by [the petitioner]. . . . This is going to open the door to numerous collateral issues . . . I think all of these are collateral. They have nothing to do with the case. It has to do with what Miss Bruemmer [and the petitioner] may have been trying to do . . . to sue people." Defense counsel continued: "Joy showed me the subpoena, and I think that . . . it's overly broad. It's going to delay the case, and it's going to get us into collateral issues." The court stated that, although the subpoena was extremely broad, there had not been "any real objection . . . and [defense counsel] does not have any standing to make the objection."[3]

---

[3] The habeas court appears to have decided the issue only with respect to the prejudice prong. In passing, the court mentioned that defense counsel had lacked standing to object. The record, as noted, shows that defense counsel in fact made an effort to object to the state's access to all of the materials.

Accordingly, the record reveals that the petitioner's defense counsel raised concerns regarding the subpoena to the extent that the court would allow and that he established a record. Because the allegedly deficient activity—failing to object to the subpoena—did not occur, the habeas court did not err in concluding that the prejudice prong was not satisfied.

Additionally, on February 4, 2000, the day after Joy turned over the subpoenaed documents to the state, the defense counsel stated that "[w]ith regard to the motion for material seized from . . . Joy, I understand that the state is returning all materials that were seized from . . . Joy and it does not intend to use any of them in evidence." The prosecutor agreed and stated that "after 5 o'clock yesterday they were locked . . . in an evidence closet down in our office, and we haven't gone through them. We opened them and started to go through them . . . they're just too voluminous . . . for me to work with. And at this point, at 5 o'clock yesterday I called . . . Joy and indicated that we would return them to her this morning. I have them in here in court and [am] prepared to transfer them back to her." At the habeas trial, the prosecutor testified that he obtained three boxes of materials from Joy and that he took the three boxes home one night and returned them the following day. He testified that "all of the evidence in the case, virtually every single scrap of it, was evidence I provided to the defense and that's pretty much within those boxes. Nothing significant. Certainly nothing that changed my view of the case." He further testified that he did not find anything in the boxes that was useful or relevant to the case.

The subpoenaed documents were returned to Joy and are not able to be reviewed by us. There is nothing in the record to suggest that the subpoenaed documents contained information important to the case, and there was no evidence that the state learned anything about

the petitioner's trial strategy or confidential thoughts.[4] The habeas court found that there was no credible evidence that the prosecutor used any of the documents, and we see nothing in the record about an invasion of a privilege. On the record before us, we conclude that the court did not err in finding that the petitioner had not proven prejudice.

## F

The petitioner next claims that the court improperly rejected his claims that his appellate counsel rendered ineffective assistance by failing to raise on direct appeal the issue of prosecutorial impropriety that allegedly occurred at his second trial, namely, the prosecutor's use of a visual aid during closing arguments.[5] We disagree.

"[W]hen a petitioner is claiming ineffective assistance of appellate counsel, he must establish that there is a reasonable probability that but for appellate counsel's error, the petitioner would have prevailed in his direct appeal." (Internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 117 Conn. App. 737, 740, 980 A.2d 933 (2009), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010).

---

[4] We, of course, condemn any foray into an accused's communications with counsel.

[5] The petitioner appears to argue that the court erred in rejecting his additional claims of ineffective assistance of appellate counsel. The petitioner offers no analysis, and, accordingly, we do not review this claim. "[R]eviewing courts are not required to review issues that have been improperly presented to th[e] court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Raynor* v. *Commissioner of Correction*, 117 Conn. App. 788, 796–97, 981 A.2d 517 (2009), cert. denied, 294 Conn. 926, 986 A.2d 1053 (2010).

The court found the following. During closing argument, the prosecutor used a visual aid and commented: "This is a very complicated area of the law, self-defense; you will see that. And I've written down some of my thoughts so that you can see them as I speak them just to help you. Some of these thoughts that I have are propositions of law, and there's about ten of them, about ten or twelve sentences which are propositions of law, and I just want to get them out of the way early so you can get them in your mind; you can think about them later. The judge is going to talk to you . . . upon what the law is in this case. . . . Let's start with it." The prosecutor testified at the habeas trial that he had no specific recollection of displaying his written thoughts to the jury but that he had used visual aids during closing arguments in the past. The habeas court found that there was no evidence before it regarding the visual aid the prosecutor had used, and that it could not speculate as to the content or effect, if any, that the aid had on the jury. The court rejected the petitioner's argument that visual aids cannot be used to display propositions of law, which the petitioner claimed amounted to unsworn testimony. The court determined that, although the prosecutor may have displayed "propositions of law" to the jury, there was no evidence that he misstated the law, and, moreover, the court instructed the jury that the law comes solely from the court and that the jury is bound by the court's instructions. The court concluded that even if the prosecutor had improperly displayed propositions of law to the jury during summation, no prejudice resulted therefrom.

On appeal, the petitioner argues that "the act of displaying your thoughts for the exclusive view of the jury with the additional instructions to 'think about them later' is a structural error not subject to harmless error analysis." We do not agree.

The petitioner presented no evidence before the habeas court as to the content of any visual aid used by the prosecutor. As noted by the habeas court, even if the visual aid contained improper propositions of law, the trial court instructed the jurors that they "are bound by the court's legal instructions." Juries are presumed to follow the court's instructions absent clear evidence to contrary. *State* v. *Anderson,* 86 Conn. App. 854, 870, 864 A.2d 35, cert. denied, 273 Conn. 924, 871 A.2d 1031 (2005). The petitioner has not shown prejudice, and, thus, his claim fails.

### III

Having reviewed the record, and for the reasons set forth previously, we conclude that the petitioner has failed to establish that the issues he has raised are debatable among jurists of reason, that a court could resolve them in a different manner or that the questions he has raised are adequate to deserve encouragement to proceed further. See, e.g., *Greene* v. *Commissioner of Correction,* supra, 123 Conn. App. 126–27. Accordingly, the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.