******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEVON TAYLOR *v.* COMMISSIONER
OF CORRECTION
(AC 35133)

Beach, Alvord and Keller, Js.

*Argued October 9, 2014—officially released January 13, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Bright, J.)

*Peter Tsimbidaros*, assigned counsel, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney,
with whom, on the brief, were *Gail P. Hardy*, state's
attorney, and *Marcia A. Pillsbury*, deputy assistant
state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. The petitioner, Devon Taylor, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court erroneously concluded that (1) the petitioner's trial counsel did not render ineffective assistance of counsel for his failure to (a) introduce evidence to impeach the state's primary identification witness, (b) introduce evidence to establish that a police officer's alleged bias unduly influenced identification evidence, (c) introduce third party culpability evidence, (d) impeach and challenge the admission of expert opinion testimony regarding fingerprint evidence, and (e) object to the trial court's errors in its handling of a jury note, (2) the petitioner's appellate counsel did not render ineffective assistance of counsel for his failure to raise a claim on appeal related to the trial court's errors in its handling of a jury note, and (3) the trial court did not violate his constitutional rights in its handling of a jury note. We affirm the judgment of the habeas court.

The following facts, as apparent in the record or as stated by this court in an earlier appeal and found by the habeas court, and procedural history are relevant to this appeal. On August 27, 1993, "[Jay Murray, the victim,] and Ronald Wightwood, [Murray's] companion, were attempting to purchase drugs [in Hartford]. They met the [petitioner] and indicated to him that they wanted cocaine. The [petitioner] and the victim discussed the purchase and the [petitioner] entered the victim's pickup truck and drove it to the vicinity of a car wash on Albany Avenue. The [petitioner] exited the truck and retrieved a plastic bag containing a white powdery substance, which he gave to the victim. After the victim sampled and rejected the substance, the [petitioner] drove the truck and its occupants to Milford Street. The [petitioner] left the truck but returned several minutes later and shot the victim with a revolver through the driver's side window of the truck. All of those events occurred in the presence of Wightwood. The police found $150 in the truck and also found the [petitioner's] fingerprints on the exterior and interior of the truck." *State* v. *Taylor*, 52 Conn. App. 790, 792, 729 A.2d 226 (1999). The victim later died in a hospital.

The petitioner was charged with murder in violation of General Statutes § 53a-54 and criminal possession of a firearm in violation of General Statutes § 53a-217. In 1997, a jury found the petitioner guilty on both charges. The trial court, *Barry, J.*, sentenced the petitioner to a total effective term of sixty years imprisonment. This court affirmed the judgment of conviction on appeal. Id., 791.

Subsequently, the petitioner filed an amended petition for a writ of habeas corpus, which is at issue in

this appeal.[1] The amended petition contains four counts. Count one alleges that Kenneth Simon, the petitioner's trial counsel, provided ineffective assistance of counsel on the grounds that, inter alia, Simon failed (1) to introduce evidence to impeach the state's primary identification witness, Wightwood, (2) to adequately seek to suppress Wightwood's allegedly suggestive identification of the petitioner and impeach police on their "possible tainting," (3) to investigate and introduce evidence to establish a third party culpability defense, (4) to impeach the expert opinion testimony of Kenneth Zercie, an employee at the state forensic laboratory, concerning fingerprint evidence, and (5) to object to the trial court's errors in its handling of a jury note.[2] Count two broadly alleges that Glenn W. Falk, the petitioner's appellate counsel, provided ineffective assistance of counsel. Count three alleges that the trial court violated the petitioner's constitutional rights by providing an erroneous charge to the jury regarding the definition of the "intent" element of murder. Count four broadly and vaguely alleges that the petitioner's incarceration violates his constitutional rights under the fifth and fourteenth amendments to the federal constitution and article first, § 8, of the Connecticut constitution. The respondent, the Commissioner of Correction, filed a return denying the petitioner's allegations in the amended petition and raising the special defense of procedural default with regard to the petitioner's claim in count three as to the trial court's instruction on the intent element of murder. The petitioner filed a reply denying the respondent's procedural default defense. Both parties then filed pretrial briefs.

Following a trial to the court, both parties filed posttrial briefs. Approximately seven months after the parties filed their posttrial briefs, the court held a hearing wherein the parties appeared on the record and discussed some of the issues raised before the court. In particular, the court and the parties discussed the petitioner's claims pertaining to the trial court's handling of the jury note.[3] The court then permitted the parties to provide supplemental briefs regarding those claims, which both parties submitted a few weeks thereafter.

The court, *Bright, J.*, subsequently issued a memorandum of decision denying the petition. First, the court concluded that Simon did not render ineffective assistance of counsel, rejecting multiple allegations underlying the petitioner's claim.[4] Second, the court concluded that Falk did not provide ineffective assistance of counsel.[5] Third, the court concluded that the petitioner's claim that the trial court committed constitutional error in its charge to the jury regarding the intent element of murder was procedurally defaulted and, in any event, meritless because the charge was correct and not misleading. Fourth, the court concluded that the petitioner's claim that the trial court committed constitutional error in its handling of the jury note was both procedur-

ally defaulted and not raised properly before the habeas court. Nonetheless, the court considered the claim on its merits, concluding that the trial court's errors did not prejudice the petitioner and were, therefore, harmless. Finally, the court rejected the petitioner's broad claim in count four that his incarceration violated his constitutional rights, citing its conclusions that the petitioner did not prove any of his allegations in counts one, two, or three of his amended petition.

The petitioner filed a petition for certification to appeal from the court's judgment, which the court granted. Before filing his appeal with this court, the petitioner filed a motion for reconsideration, which the habeas court denied. The petitioner then filed a motion for rectification, arguing that the habeas court improperly failed to use a structural error analysis to determine whether the trial court had violated his constitutional rights. The habeas court denied his motion. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The petitioner claims that the habeas court erroneously concluded that Simon did not render ineffective assistance of counsel on multiple grounds. We disagree and address each ground in turn.

We begin by setting forth the relevant standard of review governing ineffective assistance of counsel claims. "The application of the habeas court's factual findings to the pertinent legal standard . . . presents a mixed question of law and fact, which is subject to plenary review. . . .

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citation omitted; internal quotation marks omitted.) *Hardison* v. *Commissioner of Correction*, 152 Conn. App. 410, 424, 98 A.3d 873 (2014).

A

First, the petitioner claims that the habeas court erred in concluding that Simon did not render ineffective assistance of counsel for failing to offer certain testimony and introduce certain documents to impeach the state's primary identification witness, Wightwood. Specifically, the petitioner claims that Simon should have offered the testimony of Anthony Perez, a detective at the Hartford Police Department who was the first officer to encounter Wightwood after the shooting, or, at a minimum, introduced a police report authored by Perez regarding the shooting. The petitioner further claims that Simon should have introduced a document prepared by Luisa St. Pierre, another detective at the Hartford Police Department. We disagree and address each claim in turn.

1

The petitioner claims that Simon should have offered the testimony of Perez or, at a minimum, introduced a police report authored by Perez. The following additional facts, as found by the court, are relevant here. Perez, who was the first officer to have contact with Wightwood after the shooting, filled out a police report in connection with the shooting. The report contained a "Suspects" section, wherein Perez wrote that the suspected shooter was a black male with a dark complexion, was between twenty-two and twenty-three years old, was between five feet, five inches and five feet, seven inches tall, weighed approximately 160 pounds, had a mustache, and wore a hat and a green shirt.[6] Perez did not identify the exact source of the description in his report, although he noted in the report that he had spoken with two witnesses on the night of the shooting, Wightwood and Katrina Davis. Shortly after speaking with Perez, Wightwood was interviewed by St. Pierre. Wightwood orally described the suspect to St. Pierre as a black male with a medium complexion, between twenty and twenty-five years old, five feet, nine inches tall, and having a medium build, a well-groomed mustache, and short hair. The parties stipulated at the habeas trial that the petitioner was a black male and was five feet, ten inches tall. The petitioner claimed before the habeas court that Simon should have offered Perez' testimony or introduced Perez' report to impeach Wightwood on the discrepancy between the two descriptions, alleging that Wightwood was the source of the description entered into the "Suspects" section of Perez' report.

The habeas court rejected this claim, noting that Perez' report did not specify the source of the description contained in the "Suspects" section of the report. The court acknowledged that Perez wrote in the report that Davis described the suspected shooter as wearing a hat, a black shirt, jeans, and sneakers.[7] The court determined, however, that it was unclear whether the description contained in the "Suspects" section of the

report was provided by Wightwood, Davis, or "an amalgamation of the two." Perez was unavailable to testify at the habeas trial to offer testimony identifying the source of the description. Without Perez' testimony confirming that Wightwood provided the description entered into the "Suspects" section, the court concluded that the petitioner failed to meet his burden of proof to show that Simon's performance was deficient for not introducing Perez' testimony or Perez' report to impeach Wightwood.

On appeal, the petitioner claims that the habeas court erred by concluding that it was unclear whether Wightwood provided the description contained in the "Suspects" section of Perez' report. The petitioner further claims that Simon rendered ineffective assistance of counsel for failing to call Perez or to introduce his police report, offering the same arguments he presented before the habeas court to support this claim.

We agree with the habeas court's analysis of this claim. "[O]ur habeas corpus jurisprudence places a heavy burden on the petitioner to establish that, notwithstanding his conviction, he is entitled to a new trial." (Internal quotation marks omitted.) *Fine* v. *Commissioner of Correction*, 147 Conn. App. 136, 144, 81 A.3d 1209 (2013). It is unclear on the face of Perez' report who provided the exact description contained in the "Suspects" section and no other evidence sheds light on the issue.[8] If Wightwood did not provide that description, then the report would have been useless for the purpose for which the petitioner argues that it should have been presented by Simon, specifically, to impeach Wightwood in relation to any descriptions of the suspected shooter that he provided. Without Perez' testimony clarifying this ambiguity, the habeas court correctly concluded that the petitioner failed to meet his burden of proving that Simon was deficient for failing to call Perez as a witness or introduce Perez' report to impeach Wightwood.

For the foregoing reasons, we agree with the habeas court that the petitioner has not met his burden to prove that Simon's performance was deficient for failing to offer Perez' testimony or to introduce Perez' report to impeach Wightwood. Therefore, the petitioner cannot prevail on his claim of ineffective assistance of counsel on this ground.

2

Next, the petitioner claims that Simon should have introduced a document prepared by St. Pierre. The following additional facts, as found by the court, are relevant here. More than one year after the shooting, St. Pierre sent a document entitled "Request For Examination of Physical Evidence" to a forensic laboratory seeking to compare the petitioner's fingerprints to those found on the victim's truck. St. Pierre wrote in the

document that "[o]ne witness riding in the truck was too drunk to make an identification." The petitioner argued before the habeas court that Simon should have introduced this document to provide the jury with St. Pierre's statement that Wightwood was "too drunk to make an identification" in order to undermine Wightwood's identification of the petitioner as the suspected shooter. Simon testified at the habeas trial that he was aware of the document during the criminal trial, but chose not to introduce it because he believed it was inadmissible hearsay.

The habeas court rejected this claim. The court explained that, although Simon did not introduce St. Pierre's document into evidence, he used the document on cross-examination to orally publish St. Pierre's written statement in the document to the jury. The following exchange occurred between Simon and St. Pierre at the criminal trial:

"[Simon]: In fact, when you made out your police report on this matter, you said Mr. Wightwood appeared to be under the influence of alcohol. Did you not?

"[St. Pierre]: Yes.

"[Simon]: And, further, when you made request for examination of physical evidence, that is, the comparison of the fingerprints, you stated that one witness riding in the truck was too drunk to make an identification. Isn't that so?

"[St. Pierre]: At that time it appeared that he had been drinking, yes.

"[Simon]: But your statement was that one witness riding in the truck was too drunk to make an identification?

"[St. Pierre]: It appeared to me that he was drunk, yes."[9]

Moreover, the court found that both Simon and the prosecution stated in their closing arguments that St. Pierre had determined that Wightwood was "too drunk to make an identification." The court concluded that it was not "objectively unreasonable" for Simon to forgo introducing the document as an exhibit when St. Pierre's statement that Wightwood "was too drunk to make an identification" was provided to the jury through St. Pierre's testimony and mentioned by both parties during closing arguments before the jury.[10] Therefore, the court concluded that Simon's performance was not deficient.

On appeal, the petitioner claims, using the same arguments he presented before the habeas court, that the habeas court erred in concluding that Simon did not render ineffective assistance of counsel due to his failure to introduce St. Pierre's document. We agree with the habeas court's analysis of this claim. While we recognize that statements made during closing arguments

do not constitute evidence before the jury; see *State* v. *Carter*, 122 Conn. App. 527, 533, 998 A.2d 1217 (2010), cert. denied, 300 Conn. 915, 13 A.3d 1104 (2011); we agree that St. Pierre's statement regarding Wightwood's condition that she wrote in the document was sufficiently provided to the jury through St. Pierre's testimony. Simon twice asked St. Pierre whether she believed Wightwood was "too drunk to make an identification" on the night of the shooting. While the jury reasonably could have interpreted St. Pierre's first reply, which was that she believed Wightwood "had been drinking, yes," as nonresponsive, the jury reasonably could have interpreted her second reply, that she believed Wightwood "was drunk, yes," as an affirmative answer to Simon's question. As a result, St. Pierre's document would have constituted cumulative evidence of this fact. See *Hall* v. *Commissioner of Correction*, 152 Conn. App. 601, 610, 99 A.3d 1200 (counsel's decision not to introduce cumulative evidence did not prejudice petitioner), cert. denied, 314 Conn. 950,      A.3d (2014).

For the foregoing reasons, we agree with the habeas court that the petitioner has not met his burden to prove that Simon's performance was deficient for failing to introduce St. Pierre's document to impeach Wightwood. Therefore, the petitioner cannot prevail on his claim of ineffective assistance of counsel on this ground.

B

Second, the petitioner claims that Simon rendered ineffective assistance of counsel because he did not introduce St. Pierre's "Request For Examination of Physical Evidence," as discussed previously in part I A of this opinion, at a pretrial suppression hearing and at trial to establish that St. Pierre exhibited bias against the petitioner. The following additional facts, as found by the court, are relevant here. More than one year after the shooting, St. Pierre presented a photographic array to Wightwood at a Hartford police station. Wightwood identified the petitioner, whose photograph was in the array, as the suspected shooter. The petitioner argues that St. Pierre's document established St. Pierre's bias against the petitioner because St. Pierre wrote in that document that "[t]he above listed suspect [the petitioner] is the person who pulled the trigger, making every effort to place him in the truck."

The respondent asserts that this court should not review the petitioner's claim because the petitioner did not present it before the habeas court and the habeas court did not address it in its memorandum of decision. We agree. What the petitioner actually argued before the court was that Simon should have introduced certain other statements made by St. Pierre, before and during the presentation of the photographic array, unrelated to her statement in the document, that indicated that she unduly influenced Wightwood's identification.

The court rejected that specific claim. As the petitioner concedes in his appellate brief, however, the court made no mention of the petitioner's claim that Simon should have introduced St. Pierre's document to establish bias in Wightwood's identification of the petitioner.[11] Therefore, we decline to consider this claim. See *Henderson* v. *Commissioner of Correction*, 129 Conn. App. 188, 198, 19 A.3d 705 ("[a] reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court"), cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011).

C

Third, the petitioner claims that the habeas court erroneously concluded that Simon did not render ineffective assistance of counsel because he did not locate, interview, and offer the testimony of Antoine Williams, who allegedly had information that would have established a third party culpability defense for the petitioner.[12] Williams provided the following testimony at the habeas trial. Williams was near the scene of the shooting and saw Anthony Bennefield, whom Williams described as an "associate," run toward him through an empty field. Bennefield appeared to be sweating, breathing heavily, and appeared nervous and excited. Bennefield told Williams that two white males tried to rob him and asked Williams to walk with him back toward the area of the shooting. Bennefield also suggested creating an alibi, namely, that they were walking to a friend's home nearby, if the police approached them and asked questions. Williams testified that, on the basis of Bennefield's appearance and behavior, he believed Bennefield may have been involved in the shooting. A police officer stopped them as they were walking near the scene of the shooting and asked why they were there. Williams replied that they were simply curious about the commotion and that they did not have any knowledge concerning the shooting. Williams did not tell the police that night about his suspicions regarding Bennefield. Furthermore, Williams testified that Bennefield had died sometime prior to the habeas trial. No evidence was presented indicating Bennefield's date of death. The petitioner claimed before the habeas court that Simon would have established a third party culpability defense had he found, interviewed, and offered Williams as a witness at his criminal trial.

The habeas court concluded that, for two reasons, Simon's performance was not deficient for failing to find, interview, and call Williams to testify. First, the court found that the petitioner failed to prove that Williams was available for Simon to interview or offer as a witness. There was no evidence produced indicating Williams' whereabouts from 1995 to 1997, the time during which Simon was preparing for the petitioner's criminal trial. The petitioner argued that it was reasonable for the court to infer that Williams was available to

Simon because the police had listed Williams as residing at a Hartford address in the petitioner's arrest warrant, dated December 29, 1994, and further because Neil Hunt, a private investigator who took written statements from Wightwood and Williams regarding the shooting years after the petitioner's conviction, had located Williams in Hartford in 2002. The court declined to make that inference.[13] The court also noted that the petitioner had the opportunity to elicit testimony regarding Williams' whereabouts from 1995 to 1997 during the habeas trial, but failed to do so. Second, the court found that the petitioner failed to prove that Williams would have provided exculpatory testimony at trial. The court found that Williams had provided potentially exculpatory information to Hunt and to the court through his testimony at the habeas trial. Despite this, the court stated that Williams failed to provide the police with the same exculpatory information on the night of the shooting in 1993 and when they interviewed him in 1994. The court thereby concluded that it was unlikely that Williams would have provided Simon with any useful information even if Simon had located and interviewed him prior to the criminal trial.[14]

On appeal, the petitioner claims, using the same arguments he presented before the habeas court, that the habeas court erred in concluding that Simon did not render ineffective assistance of counsel for failing to locate and interview Williams, and to introduce Williams' testimony. We agree with the habeas court's analysis of this claim. To argue that Simon rendered ineffective assistance of counsel for failing to offer Williams as a witness, the petitioner had to prove, " 'by demonstrable realities' "; *Hopkins* v. *Commissioner of Correction*, 95 Conn. App. 670, 677, 899 A.2d 632, cert. denied, 279 Conn. 911, 902 A.2d 1071 (2006); that Williams was available to Simon while he was preparing for trial. See, e.g., *Floyd* v. *Commissioner of Correction*, 99 Conn. App. 526, 532, 914 A.2d 1049 (affirming denial of ineffective assistance of counsel claim where petitioner failed to prove availability of witnesses, contents of testimony and whether testimony would have favorably impacted outcome), cert. denied, 282 Conn. 905, 920 A.2d 308 (2007); *Hopkins* v. *Commissioner of Correction*, supra, 677; *Lewis* v. *Commissioner of Correction*, 89 Conn. App. 850, 861, 877 A.2d 11 (affirming denial of ineffective assistance of counsel claim where petitioner failed to prove availability of witnesses), cert. denied, 275 Conn. 905, 882 A.2d 672 (2005). Here, it is unclear where Williams resided from 1995 to 1997. As the court found, the petitioner elicited no testimony from Williams as to his residence during that time period. Because the petitioner had the burden to prove Williams' availability " 'by demonstrable realities' "; *Hopkins* v. *Commissioner of Correction*, supra, 677; rather than by mere speculation, we decline to draw the inference that Williams must have lived in Hartford

from 1995 to 1997 because the police listed Hartford as his address in 1994 and Hunt located him in Hartford in 2002.

Furthermore, the petitioner failed to meet his burden to prove that Williams would have provided favorable information to Simon prior to the criminal trial. See *Thomas* v. *Commissioner of Correction*, 141 Conn. App. 465, 472, 62 A.3d 534 ("[t]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense" [internal quotation marks omitted]), cert. denied, 308 Conn. 939, 66 A.3d 881 (2013); *Floyd* v. *Commissioner of Correction*, supra, 99 Conn. App. 532 (ineffective assistance claim fails where petitioner did not prove witnesses were available to testify at criminal trial, what subject of testimony would be and whether testimony would have had favorable impact on trial's outcome). As the court correctly found, Williams did not explain his suspicions about Bennefield to the police when they approached him on the night of the shooting or when they interviewed him the following year. Therefore, the petitioner has not proven, " 'by demonstrable realities' "; *Hopkins* v. *Commissioner of Correction*, supra, 95 Conn. App. 677; rather than by mere speculation, that Simon would have elicited exculpatory information from Williams to establish a third party culpability defense at the criminal trial.

For the foregoing reasons, we agree with the habeas court that the petitioner has not met his burden to prove that Simon's performance was deficient for failing to locate and interview Williams, or to introduce Williams' testimony to establish a third party culpability defense at the criminal trial. Therefore, the petitioner cannot prevail on his claim of ineffective assistance of counsel on this ground.

D

Fourth, the petitioner claims that the habeas court erred in concluding that Simon did not render ineffective assistance of counsel because he failed to address Zercie's expert opinion testimony concerning fingerprint evidence. Specifically, the petitioner claims that Simon should have challenged the admissibility of Zercie's opinion that the petitioner was the last individual to touch the victim's truck, and sought a disclosure of the summary of Zercie's opinion and a basis for Zercie's opinion. In the alternative, the petitioner claims that Simon should have impeached Zercie's opinion that the petitioner was the last individual to touch the victim's truck during the criminal trial. We disagree and address each claim in turn.

The following additional facts, as found by the court or as evident in the record, are relevant here. Zercie

testified at the criminal trial that a set of fingerprints belonging to the petitioner was located on or near the victim's truck's door frame and that, on the basis of his review of the fingerprints, the petitioner was the last person to touch the door frame. At the habeas trial, Simon testified that he consulted with a fingerprint expert prior to the criminal trial, who concluded that the fingerprints belonged to the petitioner. Simon testified that he decided not to call the fingerprint expert as a witness because Simon believed his testimony would have undermined the petitioner's defense.

The petitioner argued before the habeas court that Simon should have challenged Zercie's conclusions that the petitioner's fingerprints were located on the victim's truck and that the petitioner was the last person to touch the victim's truck. At the habeas trial, the petitioner, through an offer of proof, offered the testimony of Simon Cole, a teacher and researcher in the field of sociology of forensic science, to indicate that Simon could have introduced evidence to challenge the validity of Zercie's opinions. The court rejected Cole's proffered testimony regarding the reliability of fingerprint identification in 1997, the year of the petitioner's criminal trial, as irrelevant, but the court accepted into evidence four articles, predating 1997, that discussed whether the age of fingerprints could be reliably determined. The petitioner also called Leon Kaatz, an attorney, as a legal expert who testified that he agreed with Simon's decision not to challenge the fingerprint evidence, calling the fingerprint evidence a "red herring." Kaatz testified that he would have argued instead that the last person to touch the truck was not necessarily the suspect, and he further would have asked Zercie on cross-examination whether someone could have touched the truck without leaving a print.

The habeas court concluded that Simon did not render ineffective assistance of counsel for his handling of Zercie's testimony. Regarding Zercie's testimony about the presence of the petitioner's fingerprints on the truck, the court credited Simon's testimony that he had consulted with a fingerprint expert and, as a matter of trial strategy, relied on the consultation as a reason not to challenge Zercie's conclusion that the petitioner's fingerprints were found on the victim's truck. The court further supported its conclusion on the basis of Kaatz' testimony that he agreed with Simon's decision not to challenge Zercie's conclusion concerning the presence of the petitioner's fingerprints.

Regarding Zercie's opinion that the petitioner was the last person to touch the truck, the court rejected the petitioner's argument that Simon should have made a greater effort to challenge that conclusion. The court found that Simon did argue at trial, as Kaatz suggested, that a second person may have approached the truck and shot the victim, which mitigated the inference that

the petitioner was the shooter because he was the last person to touch the truck. In addition, the court found that it was unclear how Zercie would have answered Kaatz' question as to whether another individual could have touched the door frame without leaving a print. Without testimony from Zercie at the habeas trial as to his response to that question, the court could not conclude that Zercie's answer at the criminal trial would have been favorable to the petitioner. The court also rejected the four articles submitted into evidence by the petitioner concerning the reliability of determining the age of fingerprints, finding them inapplicable because Zercie did not testify to the age of the fingerprints found on the victim's truck but rather to the relative time placement between the various fingerprints on the truck. Even if the articles were relevant, the court further found that the petitioner submitted no evidence indicating that a trial attorney practicing in 1997 would have been aware of the articles.

For the foregoing reasons, the court rejected the petitioner's claims concerning Simon's handling of Zercie's expert opinion testimony.

1

The petitioner first claims that Simon rendered ineffective assistance for failing to object to the admission of Zercie's testimony that, in his opinion, the petitioner was the last person to touch the victim's truck. The petitioner argues that evidence he produced at the habeas trial illustrated that Zercie's conclusion was not scientifically valid at the time of the criminal trial. In addition, the petitioner claims that Simon should have sought a disclosure of the summary of Zercie's opinion and a basis for Zercie's opinion.

The respondent asserts that this court should not review the petitioner's claims because the petitioner failed to raise them before the habeas court. We agree. It is axiomatic that we do not review claims on appeal that were not properly raised before the habeas court. See *Hedge* v. *Commissioner of Correction*, 152 Conn. App. 44, 59, 97 A.3d 45 (2014). "The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise." (Citations omitted; internal quotation marks omitted.) *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 181, 774 A.2d 148 (2001).

Here, the petitioner did not allege in his amended complaint that Simon failed to challenge the admissibility of Zercie's testimony or request a disclosure of the summary of his opinion along with the basis of his opinion. The petitioner only alleged that Simon "did not consult with any experts to assist in the presentation of the petitioner's case, including experts in the area of fingerprints and fingerprint analysis . . . [and] did not present expert testimony in support of [the petitioner's] defense . . . ."

Furthermore, the petitioner focused his argument in his posttrial brief on Simon's alleged failure to impeach Zercie adequately. The petitioner summarily stated that "[t]here is a question as to whether Zercie's testimony was even admissible" without further elaboration. Likewise, the petitioner merely listed Simon's failure to seek a disclosure of the summary of Zercie's testimony and a basis for his opinion as an alleged shortcoming of Simon's performance. The respondent did not address these claims in his posttrial brief, which was filed on the same date as the petitioner's posttrial brief. Our case law dictates that claims raised by a petitioner for the first time in a posttrial brief are not reviewable by this court when a respondent has no notice of such claims and no opportunity to respond to them in its posttrial brief. See *Holley* v. *Commissioner of Correction*, supra, 62 Conn. App. 181 (no review of claim raised for first time in posttrial brief); *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 406–407, 726 A.2d 657 (finding that habeas court improperly reviewed claim raised for first time in posttrial brief), cert. denied, 249 Conn. 920, 733 A.2d 233 (1999).

For the foregoing reasons, we decline to review these claims on appeal.

### 2

The petitioner next claims that the habeas court erred in concluding that Simon did not render ineffective assistance of counsel for his failure to impeach Zercie's opinion that the petitioner was the last person to touch the truck. The petitioner argues that, in accord with Kaatz' testimony, Simon should have provided an alternate explanation for the presence of the petitioner's prints on the victim's truck. In addition, the petitioner argues that the time deposition of his fingerprints was a critical issue on which Simon should have challenged Zercie's opinion. The petitioner also argues that the habeas court's finding that the articles submitted by the petitioner did not cover the scope of Zercie's opinion was clearly erroneous and, therefore, that Simon could have used the articles to impeach Zercie.

We agree with the habeas court's analysis of this claim. The petitioner suggests that Simon did not address Zercie's opinion that the petitioner was the last person to touch the victim's truck. As the court

correctly found, however, Simon argued during closing arguments that a third party may have approached the truck and shot the victim without leaving a print, undermining the inference that the petitioner was the suspected shooter because he was the last person to touch the truck. Kaatz testified that he would have presented a similar argument. Although Kaatz also would have asked Zercie whether someone could have touched the truck without leaving a print, it is unknown what Zercie's answer would have been because he did not testify at the habeas trial. Further, we agree with the court that the four articles submitted by the petitioner at the habeas trial would not have been effective in impeaching Zercie's opinion. As the court correctly found, all four articles discussed the determination of the age of fingerprints, which is inapposite to Zercie's opinion that the petitioner was the last person to leave fingerprints on the truck.[15] Even if those articles were on point, we also agree with the court that the petitioner produced no evidence indicating that it was reasonable for Simon in 1997 to find such evidence and introduce it to impeach Zercie.

For the foregoing reasons, we agree with the habeas court that the petitioner has not met his burden to prove that Simon's performance was deficient in his handling of Zercie's expert opinion testimony.[16] Therefore, the petitioner cannot prevail on his claim of ineffective assistance of counsel on this ground.

E

Finally, the petitioner claims that Simon rendered ineffective assistance of counsel because he failed to object to the trial court's decision to seal a jury note without an explanation on the record, its refusal to divulge the contents of the note to counsel, and its instruction to the jury following its receipt of the note. The petitioner further claims that Simon should have sought a mistrial on the basis of the trial court's errors. We disagree.

The following additional facts, as found by the habeas court, are relevant here. On the third day of deliberations, the trial court received a jury note signed by the foreperson.[17] The note read:

"Judge Barry–I have polled the jury 4 times after various deliberations and discussions. Votes were as follows on the charge of murder:

"10-8-97     4G     5NG     3 undecided

"10-9-97     6G     5NG     1 undecided

"10-9-97     7G     5NG

"10-10-97     7G     5NG

"I started discussion this AM with a proposal to compromise—that is, that we would find [the petitioner] not guilty on murder and move to convict on a lesser

charge. This proposal was rejected by 4 jurors.

"Deliberations continued and a 4th vote was taken.

"Next steps??"

The court had the following exchange with the foreperson after receiving the note:

"The Court: . . . Let me ask you . . . am I correct, having read your note—would I be correct to state that the jury is in disagreement as to a verdict of guilty or not guilty regarding the first count of murder?

"The Foreperson: Yes, Your Honor. And, therefore, we never got to the second count.

"The Court: I understand. I believe that you have deliberated for a total of somewhere around four hours or approximately a little more. And I may be wrong about that. But both yesterday and today and for a total of four to five hours, I believe, but I'm not certain. In any event, I believe more deliberations are necessary. I want to remind you that you have to deal with count one as charged first, that is the charge of murder, and reach a unanimous decision of guilt or nonguilt as to that charge, if you possibly can. If your unanimous verdict is guilty, you will move on to count two. If your unanimous verdict on murder in the first count is not guilty, then and only then will you consider lesser included offenses of murder as I instructed you. And then, after having done that, you would move on to count two.

"If you remain in disagreement on the charge of murder after further deliberations, let us know in the same manner with simply a note to the effect that you are in disagreement on the first count, and we will bring you back into court for further instructions."

After the jury left the courtroom, the court marked the note as a court exhibit and sealed it. The court stated that a verbatim recitation of the note's contents was not placed into the record or revealed to counsel, but that counsel knew that the jury was in disagreement about reaching a unanimous verdict on the murder charge and was seeking advice on how to proceed. Counsel did not object to the trial court's decision to seal the note or its instruction to the jury following receipt of the note. The note was unsealed for the first time during the habeas trial.

The habeas court rejected the petitioner's claim that Simon rendered ineffective assistance of counsel for failing to object to the trial court's decision to seal the jury note or failure to permit Simon to address the note. The court first concluded that Simon's performance was deficient in regard to the jury note. The court found that the trial court failed to follow Practice Book § 42-49,[18] which required a court to articulate its reasoning on the record if it decided to seal any portion of the court's file. The court further found that, in any event,

a trial court could not prevent a defendant from viewing the contents of a jury note. In addition, the court noted that Practice Book § 42-7[19] required a court to provide notice and a "reasonable opportunity to be present" to parties before communicating with jurors on any aspect of a case. The court determined that the trial court failed to follow these procedures.

Furthermore, the court found the following regarding Simon's performance: Simon did not request, on the record, to see the note; Simon did not object to the court's handling of the note; reasonably competent trial counsel would have known the law, as it existed at the time of the petitioner's trial, concerning jury notes; reasonably competent counsel would have been aware of his or her client's rights to view a jury note and respond to it; there was no strategic or tactical reason not to request, on the record, to view the note; there was no strategic or tactical reason not to object to the court's handling of the note; and any off-the-record discussion by Simon with the trial court judge about the note, if it occurred, did not constitute a sufficient substitute for discussing the note on the record. On the basis of these findings, the court concluded that Simon's performance was deficient as it related to the trial court's handling of the note.

The court proceeded to conclude that Simon's deficient performance, as it related to the jury note, did not prejudice the petitioner. The petitioner, in reliance on *United States* v. *Ronder*, 639 F.2d 931 (2d Cir. 1981), argued that the trial court's instruction to the jury in response to the note constituted a defective, prejudicial "Chip Smith" charge[20] that required correction. In *Ronder*, a jury submitted three notes to the trial court on its final day of deliberations. Id., 934. The trial court did not share the contents of any of the notes with defendant's counsel and unilaterally responded to each note. Id. The United States Court of Appeals for the Second Circuit concluded that the trial court committed reversible error by not revealing the contents of the notes to the defendant's counsel, explaining that counsel could have contributed valuable input in tailoring the court's response to each note. Id., 934–35. In addition, the Second Circuit emphasized that the evidence in the case was sharply disputed and that the jury had twice reported a deadlock, making defense counsel's involvement in the court's responses to the notes critical. Id.

The habeas court disagreed with the petitioner and distinguished *Ronder* on the grounds that, inter alia, the jury here was not deadlocked, the trial court had not provided the jury with a defective Chip Smith charge, but merely instructed the jury to continue deliberating and to reach a verdict on the murder charge before considering any lesser included offenses or the other charge, and there was no evidence that the jury

felt time pressured to reach a verdict after receiving the court's instruction in response to the note. The court found that the jurors deliberated for at least one hour and one-half after receiving the court's instruction and then, following a three day holiday weekend, deliberated for an additional three hours before reaching a verdict.

Furthermore, the habeas court stated that the trial court addressed the note "in the most typical of ways" by instructing the jury in open court to, inter alia, continue deliberating and reach a unanimous verdict on the murder charge before considering lesser included offenses and the other charge. According to the habeas court, a Chip Smith charge was neither provided to the jury nor needed by the jury at that point in its deliberations. Because the trial court's response to the note was reasonable, the court determined that Simon would not have suggested any alternative response to the note had the trial court shared the contents of the note with him. The habeas court found that "[t]he petitioner presented no evidence, either from Attorney Simon or [his] expert, Attorney Kaatz, that competent counsel would have done anything differently had they been aware of the note." On the basis of its foregoing findings, the court concluded that it could "not see how the outcome of the trial could have reasonably been different had the trial court shown [the jury note] to the petitioner and Attorney Simon, and given them an opportunity to respond."

The petitioner also argued that prejudice was to be presumed under the circumstances of this case because the trial court's failure to share the contents of the note with Simon and to permit Simon to provide input into the court's response to the note effectuated a "constructive" denial of counsel. See *Strickland* v. *Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ("[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice"). The petitioner cited a Court of Appeals of New York case, *People* v. *O'Rama*, 78 N.Y.2d 270, 579 N.E.2d 189, 574 N.Y.S.2d 159 (1991), to support this proposition. In *O'Rama*, an individual juror sent a note[21] to the trial court indicating that the jury was deadlocked. Id., 275. The trial court, without divulging the contents of the note, unilaterally addressed the jury. Id. The court asked five jurors whether they believed the jury could reach a unanimous verdict, to which four jurors responded affirmatively. Id. The court " 'implor[ed]' " the jury to try to reach a unanimous verdict and administered an *Allen* charge.[22] Id. On appeal, the Court of Appeals concluded that the trial court had committed reversible error in failing to divulge the contents of the jury note to the defendant's counsel, in violation of a New York law of criminal procedure.[23] Id., 278–79. The court rejected the state's argument that reversal was improper without a showing of specific prejudice, stat-

ing that "[m]anifestly, [the] defendant was prejudiced by the court's actions, since the decision to withhold the contents of the juror's note deprived him of the opportunity to have input, through counsel or otherwise, into the court's response to an important, substantive juror inquiry. . . . [T]he trial court did respond to the juror's inquiry with a substantive *Allen* instruction that was, unquestionably, intended to have an effect on the deliberative process. In this context, the court's failure to notify counsel of the note's contents, which resulted in a denial of the right to participate in the charging decision, was inherently prejudicial . . . ." (Citation omitted; emphasis omitted; footnote omitted.) Id., 279–80.

The habeas court rejected this argument. First, the court emphasized that, to support his ineffective assistance of counsel claim, the petitioner bore the burden of establishing prejudice by a preponderance of the evidence. The court refused to presume prejudice. Second, the court noted that, in direct appeals, other reviewing courts adjudicating similar issues concerning jury notes performed harmless error analyses, under which a showing that the proclaimed errors affected the outcome of the respective cases was necessary to prevail. Finally, the court distinguished the present case from *O'Rama*, noting that the jury in the present case was not deadlocked and did not receive a Chip Smith charge.

For the foregoing reasons, the court concluded that the petitioner failed to prove that Simon's deficient performance prejudiced him.[24]

On appeal, the petitioner claims, using the same arguments he presented before the habeas court, that the habeas court erred in concluding that Simon did not render ineffective assistance of counsel for not addressing the trial court's errors in its handling of the jury note. We agree with the habeas court's analysis of this claim. Both the petitioner and the habeas court agree that Simon's performance in relation to the jury note was deficient. His deficient performance did not, however, prejudice the petitioner. As the court found, the trial court's instruction in response to the note did not amount to a defective, prejudicial Chip Smith charge. Instead, the trial court appropriately directed the jury to continue its deliberations and addressed the note's statement that some jurors proposed "compromis[ing]" on the murder charge by instructing them to reach a unanimous verdict on the murder charge before considering any lesser included offenses or the other charge. In addition, the petitioner was not prejudiced by the trial court's failure to provide the jury with a Chip Smith charge following its receipt of the note. The foreperson stated that the jury was in "disagreement" on the verdict of the murder charge after approximately four hours of deliberations following the jury's review of

selected portions of witness testimony and instructions. We are not persuaded that the jury was deadlocked and that the trial court should have considered administering a Chip Smith charge.[25] Therefore, we agree with the habeas court that there is not a reasonable probability that the outcome of the trial would have been different had Simon viewed the note.

Furthermore, we agree with the court that this is not one of the rare instances wherein a petitioner need not prove prejudice to establish an ineffective assistance of counsel claim. See *Anderson* v. *Commissioner of Correction*, 127 Conn. App. 538, 550, 15 A.3d 658 (2011) ("an ineffectiveness claim predicated on an actual conflict of interest is unlike other ineffectiveness claims in that the petitioner need not establish actual prejudice"), aff'd, 308 Conn. 456, 64 A.3d 325 (2013). Indeed, as the court found, the Second Circuit has performed harmless error analyses when reviewing, in direct appeals, potential errors committed by trial courts in their handling of jury notes. See, e.g., *Morris* v. *United States*, 523 Fed. Appx. 7, 9 (2d Cir. 2013) (summary order); *United States* v. *Collins*, 665 F.3d 454, 460–61 (2d Cir. 2012); *United States* v. *Mejia*, 356 F.3d 470, 476 (2d Cir. 2004); *Krische* v. *Smith*, 662 F.2d 177, 178–79 (2d Cir. 1981); *United States* v. *Ronder*, supra, 639 F.2d 934–35.[26] We are not persuaded that the circumstances of this case require us to remove from the petitioner the burden to prove prejudice.

Finally, even though it is not binding authority, we also agree with the court that *O'Rama* is distinguishable from this case. From the outset, we note that *O'Rama* involved a direct appeal on the basis of a trial court's failure to follow a rule of New York criminal procedure rather than a claim of ineffective assistance of counsel brought before a habeas court. In any event, the facts in *O'Rama* are starkly different from this case. In *O'Rama*, the trial court received three separate jury notes indicating an evident deadlock. In addition, the trial court administered a clear *Allen* charge in response to two of those notes. Here, the jury was not deadlocked and the trial court did not administer a Chip Smith charge. As we previously determined, a Chip Smith charge was not necessary under the circumstances of this case. Therefore, we cannot conclude that the trial court's failure to share the contents of the note with Simon and consult with Simon before responding to the note prejudiced the petitioner.

For the foregoing reasons, we agree with the court that the petitioner has not met his burden to prove that Simon's deficient performance, in relation to the trial court's handling of the jury note, prejudiced him. Therefore, the petitioner cannot prevail on his claim of ineffective assistance of counsel on this ground.

II

The petitioner next claims that the habeas court erred in concluding that Falk did not render ineffective assistance of counsel for failing to raise a claim on appeal concerning the sealed jury note.[27] We disagree.

We begin by setting forth the relevant standard of review governing ineffective assistance of appellate counsel claims. "Whether the representation a [petitioner] received . . . was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court . . . .

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in [*Strickland* v. *Washington*, supra, 466 U.S. 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. . . . In order to satisfy the performance prong, the petitioner must show that appellate counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . In order to satisfy the prejudice prong, the petitioner must demonstrate there is a reasonable probability that, but for appellate counsel's failure to raise the issue on appeal, the petitioner would have prevailed in his direct appeal, i.e., reversal of his conviction or granting of a new trial. . . . [T]o determine whether a habeas petitioner had a reasonable probability of prevailing on appeal, a reviewing court necessarily analyzes the merits of the underlying claimed error in accordance with the appropriate appellate standard for measuring harm." (Citations omitted; internal quotation marks omitted.) *Santaniello* v. *Commissioner of Correction*, 152 Conn. App. 583, 587–88, 99 A.3d 1195, cert. denied, 314 Conn. 937,     A.3d     (2014).

On appeal, the petitioner claims that the habeas court erred in concluding that Falk did not render ineffective assistance of counsel for his failure to raise on direct appeal any claims pertaining to the trial court's handling of the jury note. The petitioner rehashes the argument he presented before the habeas court that the trial court's handling of the jury note violated his constitutional rights and, therefore, Falk's inaction on direct appeal was deficient and prejudicial. The habeas court rejected that claim on its merits.[28] The court found that the petitioner presented no evidence regarding the extent to which Falk considered the jury note or why he chose not to claim on appeal that the trial court improperly handled the jury note. Falk did not testify at the habeas trial. Furthermore, citing its previous conclusion that the trial court's errors regarding the jury note did not prejudice the petitioner, the court could not conclude that Falk's failure to raise a claim pertaining to the jury note on appeal prejudiced the petitioner. For the foregoing reasons, the court concluded that Falk did not render ineffective assistance of counsel.

We agree with the habeas court's analysis of this claim. The petitioner did not call Falk as a witness at the habeas trial and presented no evidence to explain Falk's strategy on appeal. Therefore, the petitioner has not met his burden to prove that Falk's performance fell below an objective standard of reasonableness under these circumstances. Id. In addition, as we discussed in part I E of this opinion, the petitioner was not prejudiced by the trial court's errors in its handling of the jury note. Consequently, the petitioner has not met his burden to prove that he would have prevailed on appeal had Falk raised a claim concerning the jury note. Id.

For the foregoing reasons, we agree with the court that the petitioner cannot prevail on this claim.

### III

Finally, the petitioner claims that the court erred in concluding that the trial court did not violate his constitutional rights in its handling of the jury note, as discussed in part I E of this opinion. Specifically, the petitioner claims that the court erroneously performed a harmless error analysis rather than a structural error analysis in reviewing his claim. In the alternative, the petitioner claims that the court erroneously concluded that the trial court committed harmless error in its handling of the jury note. The respondent asserts that this court should not review the petitioner's claim because it was not properly raised before the habeas court and it is procedurally defaulted. We agree with the respondent and decline to review the petitioner's claim on the basis of our conclusion that it is procedurally defaulted.

In its memorandum of decision, the habeas court explicitly stated that this claim was procedurally defaulted due to the petitioner's failure to raise it on direct appeal.[29] The court rejected the petitioner's argument that his failure to raise the issue on direct appeal stemmed from the ineffectiveness of his trial and appellate counsel, citing its conclusions that neither Simon nor Falk rendered ineffective assistance of counsel. Consequently, the court concluded that the petitioner's claim was procedurally defaulted. Nonetheless, the court proceeded to consider the claim on its merits, finding that the trial court's errors did not prejudice the petitioner and were, therefore, harmless.

We agree with the habeas court that the petitioner's claim is procedurally defaulted due to his failure to raise it on direct appeal and, therefore, we decline to review it. For this court to review a claim that the petitioner was required to raise on direct appeal but failed to do so, "the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition. . . . [T]he cause and prejudice test is designed to prevent full review of

issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance." (Emphasis omitted; internal quotation marks omitted.) *Epps* v. *Commissioner of Correction,* 153 Conn. App. 729, 736–37,     A.3d    (2014).

The petitioner argues that the ineffective assistance of counsel rendered by Simon and Falk led to his failure to raise his claim on appeal. Therefore, he claims that he satisfied the "good cause and prejudice" test. We disagree. As we previously determined in parts I E and II of this opinion, the habeas court correctly determined that the petitioner did not prove that Simon or Falk rendered ineffective assistance of counsel on any ground, including their failure to address the trial court's errors in its handling of the jury note. Consequently, the petitioner cannot prove that he satisfied the "good cause and prejudice test" in order to prevail on his ineffective assistance of counsel claim. We, therefore, decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner first filed a petition for a writ of habeas corpus on May 4, 2006. The petitioner then filed an amended petition for a writ of habeas corpus on February 3, 2011. On April 25, 2011, the petitioner filed a motion to amend his amended petition, which the court granted on May 9, 2011.

[2] The petitioner amended his petition to raise allegations concerning the trial court's handling of the jury note as follows:

"Trial counsel failed to file certain motions during the proceedings, including a motion relating to the trial court's sealing of a note drafted by the jury. . . . Connecticut Practice Book § 42-49, which was in effect at the time, mandated the trial court to articulate the 'overriding interest' which required the seal of the document, which the trial court did not do. Trial counsel failed to seek the articulation of, failed to ensure that there existed an overriding interest to require the seal, and failed to argue that the petitioner's rights were violated, including those of due process."

These allegations were set forth in count one and incorporated into counts two, three, and four.

[3] Initially, the court explained that the jury note had been mismarked at the habeas trial and, therefore, the court wanted to correct the record. Without objection, the court "open[ed] up the factual record" and permitted the petitioner to introduce the jury note as a full exhibit. This eventually led to a discussion of the merits of the petitioner's claims concerning the jury note.

[4] The court described the petitioner's claim of ineffective assistance of counsel to be a "broad attack on virtually everything trial counsel did or did not do . . . ." The court did not address some of the petitioner's allegations in count one on the basis of its determination that the petitioner had abandoned the allegations due to his failure to provide sufficient evidence at trial and to brief the issues adequately. The petitioner does not raise any claims in this regard before this court on appeal.

[5] In his posttrial brief, the petitioner claimed that, in his direct appeal, Falk rendered ineffective assistance of counsel for his failure to challenge the trial court's intent instruction regarding the murder charge and the trial court's handling of the jury note. The court questioned whether the petitioner properly raised these claims in his amended petition or at the habeas trial. In any event, the court considered the merits of the petitioner's claims because the respondent did not argue that the court was barred procedurally from reviewing those claims.

[6] The "Suspects" section of the report contained boxes to input information regarding a criminal suspect's sex, race, age, height, weight, hair color, hair type, complexion, and other miscellaneous information.

[7] Perez entered this information into a section of the report entitled "Inci-

dent Details," wherein Perez summarized his actions and observations after responding to the dispatch concerning the shooting.

[8] At the habeas trial, Wightwood testified that he did not recall meeting Perez or providing a description to him. The petitioner then showed Wightwood Perez' report and asked if it refreshed his recollection as to whether he gave a description to Perez shortly after the shooting, specifically referencing the "Suspects" section of the report. In response, Wightwood replied, "[y]eah, I guess." Wightwood then, upon the petitioner's request, read the information contained in the "Suspects" section into the record. The petitioner did not ask Wightwood to confirm that the description in the "Suspects" section came solely from him.

We acknowledge that the habeas court is "the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Michael G.* v. *Commissioner of Correction*, 153 Conn. App. 556, 560,    A.3d    (2014). On the basis of the habeas court's conclusion that it is unclear whether Wightwood provided the description in the "Suspects" section, we presume that the court did not credit Wightwood's equivocal testimony that potentially supported the proposition that Wightwood was the source of the description contained in the "Suspects" section.

[9] The trial court transcript indicates that St. Pierre had testified: "It appeared to me that he was *drink*, yes." (Emphasis added.) The habeas court surmised that the word "drink" was a scrivener's error that instead should have read "drunk."

The respondent subsequently filed a motion for rectification to modify the record showing that St. Pierre had stated "drunk" in her testimony. The habeas court granted the motion.

[10] The court also rejected the petitioner's argument that there was a significant difference between a jury hearing St. Pierre's testimony about Wightwood's intoxicated state, and seeing the written statement in St. Pierre's request. In support of his claim, the petitioner cited a decision of the United States Court of Appeals for the Ninth Circuit, *Hart* v. *Gomez*, 174 F.3d 1067, 1069–70 (9th Cir.), cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999), wherein the court held that trial counsel was ineffective for not offering into evidence documents that would corroborate a key defense witness' testimony. The habeas court distinguished *Hart*, noting that the evidence in *Hart* buttressed the defense witness' testimony while undermining a state's witness' testimony on a critical issue in the case. In contrast, the court found that St. Pierre's request did not serve a similar purpose in this case because St. Pierre acknowledged the contents of the request and, therefore, no corroboration was required.

[11] The court rejected a separate claim made by the petitioner that Simon should have introduced St. Pierre's document to challenge the conclusion, as being based on bias, that the petitioner's fingerprints were located on the victim's truck. That claim is wholly distinct from the claim that the petitioner raises here.

[12] The petitioner argued before the habeas court that Simon should have introduced the testimony of two other individuals who were located by the police near the scene of the shooting, Greg Evans and Anthony Bennefield.

The court concluded that Simon did not render ineffective assistance of counsel for his failure to offer the testimony of Evans, Bennefield, or Williams to establish a third party culpability defense. In his brief, the petitioner focuses his claim on the court's conclusion regarding Williams. He states, without analysis, that Evans was available to testify at the criminal trial, but does not address the court's conclusions that Evans' testimony would not have provided exculpatory evidence at trial. To the extent that the petitioner raises the claim that Simon provided ineffective assistance of counsel for failing to call Evans as a witness, we decline to review it due to the petitioner's failure to brief the claim adequately. See *Saunders* v. *Commissioner of Correction*, 137 Conn. App. 493, 512 n.5, 48 A.3d 728, cert. denied, 307 Conn. 920, 54 A.3d 182 (2012). Likewise, the petitioner states, without analysis, that Simon would have discovered exculpatory evidence by locating and interviewing Bennefield without discussing the court's conclusions that the petitioner presented no evidence showing Simon could have located Bennefield prior to the criminal trial and that Bennefield would have provided Simon with favorable information. To the extent that the petitioner raises the claim that Simon provided ineffective assistance of counsel for failing to call Bennefield as a witness, we decline to review it due to the petitioner's failure to brief the claim adequately. See id.

Furthermore, the petitioner appears to claim, for the first time on appeal, that Simon should have offered the testimony of certain officers who witnessed Bennefield acting "suspiciously" to establish a third party culpability defense. We decline to review this claim because the petitioner raised it for the first time on appeal; see *Hedge* v. *Commissioner of Correction*, 152

Conn. App. 44, 59, 97 A.3d 45 (2014); and because the claim was not addressed by the habeas court in its memorandum of decision. See *Henderson* v. *Commissioner of Correction*, supra, 129 Conn. App. 198 ("[a] reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court").

[13] The court further supported its conclusion by finding that Hunt located Williams in 2002 only after performing numerous Internet searches and interviewing multiple individuals, and that another investigator, Gerald O'Donnell, had difficulty in serving Williams with a subpoena to testify at the habeas trial in 2011. The petitioner initially claimed that Williams was unavailable to testify at the habeas trial, calling O'Donnell as a witness to prove Williams' unavailability. Williams ultimately appeared to testify three weeks after the petitioner argued that he was unavailable. The court determined that the petitioner's own difficulties in finding and introducing Williams at the habeas trial undermined the petitioner's argument that it was reasonable to infer that Williams was available to Simon between 1995 and 1997.

[14] The court also suggested that Williams' willingness to testify regarding Bennefield may have been influenced by Bennefield's death, considering that Williams appeared willing to discuss his suspicions about Bennefield only after Bennefield's death. The court noted that the petitioner offered no evidence suggesting that Williams would have cooperated and testified as to his suspicions concerning Bennefield while Bennefield was alive.

[15] Cole indicated that studies directly undermining Zercie's opinion existed in 1997, but he did not identify those studies, and the petitioner did not introduce any articles into evidence other than the four articles concerning the age of fingerprints.

[16] The petitioner, without analysis, claims that Simon failed to introduce St. Pierre's "Request For Examination of Physical Evidence," as discussed in parts I A and B of this opinion, to "raise bias" in the forensic finding that the petitioner's fingerprints were located on the victim's truck. The habeas court rejected this claim, noting that Kaatz testified that he would have admitted that the petitioner's fingerprints were located on the victim's truck. Furthermore, the court questioned how Simon could have challenged, in good faith, the assertion that the petitioner's fingerprints were located on the victim's truck when the expert he consulted with confirmed that claim. The petitioner failed to address the court's analysis in his appellate briefs. To the extent that the petitioner raises the claim that Simon provided ineffective assistance of counsel for failing to introduce St. Pierre's document to raise bias in the forensic finding that the petitioner's fingerprints were located on the victim's truck, we decline to review it due to the petitioner's failure to brief the claim adequately. See *Saunders* v. *Commissioner of Correction*, 137 Conn. App. 493, 512 n.5, 48 A.3d 728, cert. denied, 307 Conn. 920, 54 A.3d 182 (2012).

[17] According to the habeas court, the jury did not commence deliberations on its first day of deliberations until late in the day, after hearing closing arguments and jury instructions. The jury spent the majority of its second day of deliberations discussing various prior jury notes with the court and hearing playbacks of testimony and instructions. After hearing the playbacks, the jury deliberated for approximately four hours before submitting the note at issue on appeal, which the foreperson signed at 11:50 a.m. on the morning of the third day of deliberations.

[18] Practice Book § 42-49 was formerly § 895 in 1997, the year of the petitioner's criminal trial. Section 895 provided in relevant part: "(b) . . . [T]he judicial authority . . . may order that files, affidavits, documents or other materials on file with the court or filed in connection with a court proceeding be sealed . . . if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest . . . in viewing such materials. . . .

"(c) In connection with any order issued pursuant to paragraph (b) of this rule, the judicial authority shall, on the record in open court, articulate the overriding interest being protected and shall specify its findings underlying such order. . . ."

[19] Practice Book § 42-7 was formerly § 845 in 1997, the year of the petitioner's criminal trial. Section 845 provided: "All communications from the jury to the judicial authority shall be in writing. The judicial authority shall require that a record be kept of all communications received by him from a juror or the jury after the jury have been sworn, and he shall not communicate with a juror or the jury on any aspect of the case itself, as distinguished from matters relating to physical comforts and the like, except after notice to all parties and reasonable opportunity for them to be present."

[20] A Chip Smith charge provides guidance to a deadlocked jury in reaching a verdict. See *State* v. *O'Neil*, 261 Conn. 49, 74–75, 801 A.2d 730 (2002).

Our Supreme Court has adopted the following language for Chip Smith charges: "The instructions that I shall give you now are only to provide you with additional information so that you may return to your deliberations and see whether you can arrive at a verdict.

"Along these lines, I would like to state the following to you. The verdict to which each of you agrees must express your own conclusion and not merely the acquiescence in the conclusion of your fellow jurors. Yet, in order to bring your minds to a unanimous result, you should consider the question you have to decide not only carefully but also with due regard and deference to the opinions of each other.

"In conferring together, you ought to pay proper respect to each other's opinions and listen with an open mind to each other's arguments. If the much greater number of you reach a certain conclusion, dissenting jurors should consider whether their opinion is a reasonable one when the evidence does not lend itself to a similar result in the minds of so many of you who are equally honest and equally intelligent, who have heard the same evidence with an equal desire to arrive at the truth and under the sanctions of the same oath.

"But please remember this. Do not ever change your mind just because other jurors see things differently or to get the case over with. As I told you before, in the end, your vote must be exactly that—your own vote. As important as it is for you to reach a unanimous agreement, it is just as important that you do so honestly and in good conscience.

"What I have said to you is not intended to rush you into agreeing on a verdict. Take as much time as you need to discuss the matter. There is no need to hurry." (Emphasis omitted.) Id.

[21] This was the third note that the court received indicating a deadlock, though it is unclear whether the court revealed the contents of the previous notes to counsel or conferred with counsel in its responses to the previous notes. *People* v. *O'Rama*, supra, 78 N.Y.2d 274–75. On appeal, the defendant challenged the court's handling of only the third note. Id., 276.

[22] See *Allen* v. *United States*, 164 U.S. 492, 501–502, 17 S. Ct. 154, 41 L. Ed. 528 (1896). An *Allen* charge, like a Chip Smith charge, provides guidance to a deadlocked jury and is generally used in federal courts. *State* v. *Feliciano*, 256 Conn. 429, 431 n.3, 778 A.2d 812 (2001). The court in *O'Rama* also administered an *Allen* charge in response to the second note it received indicating that the jury was deadlocked. *People* v. *O'Rama*, supra, 78 N.Y.2d 275.

[23] Section 310.30 of the Consolidated Laws of New York provides: "At any time during its deliberation, the jury may request the court for further instruction or information with respect to the law, with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case. Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper. With the consent of the parties and upon the request of the jury for further instruction with respect to a statute, the court may also give to the jury copies of the text of any statute which, in its discretion, the court deems proper." N.Y. Crim. Proc. L. § 310.30 (McKinney 2002).

[24] The petitioner also argued that Simon's failure to object to the trial court's handling of the note compounded an allegedly defective charge the trial court provided to the jury regarding the intent element of murder. The court rejected this argument, and the petitioner does not challenge that ruling on appeal before this court.

[25] In fact, the trial court suggested that it would have provided the jury with a Chip Smith charge if further deliberations did not yield any progress. After directing the jury to continue deliberating solely on the murder charge, the court stated the following: "If you remain in disagreement on the charge of murder after further deliberations, let us know in the same manner with simply a note to the effect that you are in disagreement on the first count, and *we will bring you back into court for further instructions*." (Emphasis added.)

[26] We turn to federal case law for guidance in resolving this issue involving the petitioner's constitutional rights because our review of Connecticut case law has failed to uncover cases wherein our courts have reviewed analogous errors committed by trial courts in their handling of jury notes.

[27] The habeas court also rejected the petitioner's claim that Falk rendered

ineffective assistance of counsel for failing to challenge on appeal the trial court's instruction on the intent element of murder. The petitioner is not challenging on appeal that portion of the court's decision.

[28] The habeas court initially questioned whether the petitioner properly raised this claim before it. The court stated that the petitioner made "conclusory assertions" in his petition that Falk's performance was deficient and prejudicial. The court further asserted that the petitioner performed a "perfunctory" analysis of this claim in his posttrial brief, which, according to the court, was the first time he specifically claimed that Falk rendered ineffective assistance of counsel for failing to address the jury note on appeal. Nonetheless, the court reached the merits of the petitioner's claim on the ground that the respondent failed to argue that the court was procedurally barred from reviewing the claim.

The respondent claims that this court should not review the petitioner's claim on its merits on the basis of the habeas court's conclusions that the petitioner failed to raise it in his amended petition or at the habeas trial. Upon our review of the petitioner's amended petition, we conclude that the petitioner adequately raised this claim in his amended petition and we, therefore, review the court's ruling in relation to that claim on its merits.

[29] The habeas court also determined that the petitioner's claim that the trial court committed constitutional error by providing an allegedly defective charge to the jury regarding the intent element of murder was procedurally defaulted on the same basis. The petitioner did not raise before this court any claim pertaining to any alleged errors committed by the trial court in relation to that charge.

In addition, the court concluded that the petitioner failed to set forth the claim that the trial court committed constitutional error by its handling of the jury note in his amended petition. We do not address that determination on the basis of our conclusion that the petitioner's claim was procedurally defaulted.

––––––––––––––––––––––